# The Pennsylvania Railroad Company *versus* Zug.

*Pleading.—Joinder of counts.—Right of plaintiff to file new count after award.—Principal, how far liable for tort of agent.*

1. A count in *assumpsit* cannot be joined with a count for a deceit: and, where added after an award of arbitrators and an appeal therefrom by the defendant, under a declaration containing a count for deceit only, it was properly stricken off by the court on the trial.

2. Where a wagoner took rags from the depot of a railroad company to his employer's paper-mill, supposing them to be his, where they were used, *held*, that the employer was not, by the act of taking merely, involved in the consequences of a fraud.

3. Hence, on the trial of the action brought by a railroad company, on the count for the deceit alleged to have been practised by a defendant in obtaining the rags, it was not error in the court to instruct the jury in substance that the plaintiff could not recover, unless the goods were fraudulently taken and converted: and that the act of the wagoner in taking the goods was not of itself such a fraud as would entitle the plaintiff to recover in the action against the principal.

ERROR to the Common Pleas of *Cumberland county*.

This was an action of trespass on the case by The Pennsylvania Railroad Company against Jacob Zug.

The defendant owned a paper-mill near Carlisle, which was under the care and management of his foreman, Edmund Mather, and was in the habit of receiving rags over the Pennsylvania Railroad through Messrs. Henderson & Reed, freighters on the Cumberland Valley Railroad, to whom he had given a general order for this purpose.

Some time in 1860, twenty-one bales of rags were received at Pittsburgh by the plaintiffs, consigned to Given & Brother,

[Pennsylvania Railroad Co. v. Zug.]

paper-makers, near Carlisle. In their transit the marks were lost, and when they reached Harrisburg they were delivered to Henderson & Reed, by whom they were transported to Carlisle, and, as was averred, without the knowledge, interference, or participation of Mr. Zug, were sent to his mill and used by his workmen.

After demand for the rags or their value, this suit was brought, and the plaintiff filed a declaration, in which it was averred that the Pennsylvania Railroad Company was and still is a common carrier of goods, wares, and merchandise; that Given & Brother were the owners of twenty-one bales of rags at the city of Pittsburgh, weighing ten thousand and nine pounds, of the value of $500, and did then and there, to wit, at the city of Pittsburgh, on the 1st day of November 1860, employ and hire the plaintiffs to carry and deliver the said twenty-one bales of rags to them at Carlisle, Pennsylvania; that the said plaintiffs did accept and receive the said goods at Pittsburgh, and did undertake to deliver the same to the said Given & Brother in Carlisle, for the said Given & Brother; that plaintiffs did actually, on the 10th day of November 1860, carry and deliver the said bales of rags at the warehouse of Henderson & Reed, in Carlisle, for safe-keeping until the same should be delivered to the said Given & Brother, and was then and there about to cause the same to be delivered to the said Given & Brother, yet that Jacob Zug, well knowing the premises, but contriving wrongfully, deceitfully, and unjustly to injure and damnify the said company, so being common carriers, to make them responsible for the value of the said goods, and to deprive them of the hire and reward which they were entitled to for carrying the same, did, on the 10th November 1860, falsely, fraudulently, deceitfully, and maliciously represent and pretend to Henderson & Reed that he was authorized to receive the said twenty-one bales of rags; and that Henderson & Reed being then and there deceived by the said false representations of Jacob Zug, did then and there suffer him to take and receive the said goods, who did then and there take away the said bales of rags and convert them to his own use; that they were never delivered to Given & Brother, by means of which the Pennsylvania Railroad Company was rendered and made liable to pay to the said Given & Brother the price of the said twenty-one bales of rags, to wit, the sum of $390.09, and were wholly deprived and lost all cost, charges, and freight for carrying the said twenty-one bales of rags from Pittsburgh to Carlisle, to wit, the sum of $50.04, and other wrongs to the said company, then and there did, &c.

On this cause of action plaintiff entered a rule to arbitrate under the Compulsory Arbitration Law, and procured an award, from which the defendant appealed. When the case came on

11 WR.—31

for trial, and after all the evidence had been heard, the plaintiff asked leave to file an additional count as follows:—

And the said Pennsylvania Railroad Company further complain, for that, whereas the said Pennsylvania Railroad Company, on and before the 1st October 1861, and ever since was, and still is, a common carrier of goods, wares, and merchandise, and at that time one Given & Brother were the owners and possessed twenty-one bales of rags at the city of Cincinnati, weighing ten thousand and nine pounds, of the value of $500, and did then and there, to wit, on the 1st day of November 1860, employ and hire the plaintiff to carry and deliver the said twenty-one bales of rags to them, the said Given & Brother, at Carlisle, Penna.; and the said plaintiff did accept and receive the said goods at Cincinnati, and did undertake to deliver the same to the said Given & Brother at Carlisle aforesaid. And whereas, the said Pennsylvania Railroad Company did actually, on the 10th day of November 1860, carry and deliver the said twenty-one bales of rags at the warehouse of Henderson & Reed, in Carlisle, for safe-keeping until the same should be delivered to the said Given & Brother; and the said Pennsylvania Railroad Company was then and there about to cause the same to be delivered to the said Given & Brother, yet the said Jacob Zug, well knowing the premises, and wrongfully and unjustly intending to appropriate the said twenty-one bales of rags to his own use, and thereby to deprive the said Pennsylvania Railroad Company of the price of carrying the same, and to make them responsible for the price and value thereof to the said Given & Brother, did heretofore, to wit, on the 10th day of November 1860, falsely represent and pretend to the said Henderson & Reed, that he, the said Jacob Zug, was the owner of the said twenty-one bales of rags of the value of $500, and the said Henderson & Reed being then and . there deceived by the false representations of the said Jacob Zug, did then and there suffer the said Jacob Zug to take and receive the said goods, and the said Jacob Zug did then and there take away the said twenty-one bales of rags and convert them to his own use, and the said twenty-one bales of rags by reason thereof were never delivered to the said Given & Brother, to whom they rightly belonged, by means of which several premises the said Pennsylvania Railroad Company was rendered and made liable to pay to the said Given & Brother the price of the said twenty-one bales of rags, to wit, the sum of $390.09, and the said plaintiff did actually pay the same, to wit, on the 11th of April 1861, to the said Given & Brother, and the said plaintiff was wholly deprived of and lost all their costs, charges, and freight for carrying the said twenty-one bales of rags from Cincinnati to Carlisle, to wit, the sum of $50.04. By reason of the premises herein set forth, the said Jacob Zug became liable to pay the

[Pennsylvania Railroad Co. v. Zug.]

said Pennsylvania Railroad Company the price and value of the said twenty-one bales of rags, and the price and value of carrying the same as aforesaid, amounting together to the sum of $440.13, and in consideration thereof, afterwards, to wit, on the day and year last aforesaid, he, the said Jacob Zug promised to pay the said sum of $140.13 to the said plaintiff, when, thereto afterwards, he should be required. Nevertheless, the said Jacob Zug, although often after required, to wit, on the day and year aforesaid, he hath neglected and refused to pay the same or any part thereof, whereby action hath accrued to the said plaintiff and he hath sustained damage to the amount, &c.

The court, under exception by the defendant, allowed this last declaration to be filed, and the case was continued. The defendant's plea at this trial was "Not Guilty." On the new declaration the plaintiff entered a rule to plead, and the defendant pleaded "non assumpsit."

When the cause was reached the second time, the defendant moved the court to compel the plaintiff to elect upon which count he would proceed, alleging that the new count set forth a new cause of action, which the plaintiff denied, but the court directed the last count to be stricken from the record, and charged the jury that, the mere fact that Mr. Zug's wagoner hauled the goods away from the warehouse, if sent by Mr. Henderson under the impression that they were the property of Mr. Zug, as the evidence would appear to indicate, and they were used by Mr. Zug's foreman without Mr. Zug knowing that they were not his property, and without any procurement of Mr. Zug, on having them forwarded to his mill, the mere fact of the goods having been taken to his mill by Mr. Zug's wagoner would not be sufficient to charge Mr. Zug in the present form of action, which were the errors assigned here by the defendant after a verdict and judgment for plaintiff.

*Watts & Parker*, for plaintiff in error.

*Miller & Penrose*, for defendant.

The opinion of the court was delivered, May 24th 1864, by

AGNEW, J.—The first error assigned contains the simple proposition that a count in *assumpsit* may be joined with a count for a deceit. The fraud of the defendant, in obtaining the goods of Given & Brother from the carriers, by the deceitful and wrongful pretence of ownership, is the essential and distinct averment of the first count. The promise to pay to the carriers the price of the goods they had been compelled to pay Given & Brother, and the cost of carriage, is the equally clear foundation of the second count. The former could be tried upon the plea of not

guilty, the latter only on that of *non assumpsit*. It is clear they could not be joined, and the court did not err in directing the latter to be stricken off.

That the same evidence will often support different forms of action there is no doubt, but cases which prove this cannot be resorted to, to prove the rightful joinder of inconsistent actions. The same evidence will often support trespass or case, deceit or trover, trover or replevin, *assumpsit* or debt, but it does not follow that you can join trespass and case, deceit and *assumpsit*, or trover and debt or replevin.

Especially was the court right in striking off the second count, after the appeal from the award of arbitrators: Winder *v.* Northampton Bank, 2 Barr 446. The power of amendment, wisely committed to the courts to prevent a failure of justice in many instances, has never been extended to the changing of forms of action, and there is no doubt the power to this extent does not exist at common law, though judicial interpretation has engrafted it upon the supervisory power of the courts over appeals from justices of the peace, who are often wholly ignorant of the proper form of action to be stated on their docket.

It is a source of great regret to judges, that, after days spent in the trial, they are often compelled to say to a jury, they cannot decide the cause upon its merits, but the plaintiff must fail, because he has misconceived his form of action. It is also often a cause of regret in the Supreme Court, that a case otherwise well tried must be reversed upon this technical ground. It would be a wise provision to confer the power of amendment over the form of action, with such an equitable control of the costs as would prevent injustice.

There was no error in the answer to the plaintiff's point. The point lacked the essential element necessary to create liability for the fraud—the knowledge of the wrongful intention. Undoubtedly a wagoner who hauls away goods in the course of his usual employment, may involve his employer, to whose place of business he takes them and where they are used, in the consequences of a taking; but it by no means follows that by a taking he commits his employers to the consequences of a fraud. It requires more than this to create liability, in an action founded directly upon the fraud.

The judgment must be affirmed.