## Schell, Appellant, *v.* Miller North Broad Storage Co., Inc.

102

Argued October 2, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Harry Shapiro*, with him *Shapiro & Shapiro*, for appellant.

*Walter Biddle Saul*, with him *Caroline K. Kenworthy* and *Saul, Ewing, Remick & Harrison*, for appellee.

OPINION BY RENO, J., April 11, 1945:

This appeal brings up for review the third trial of the assumpsit action which was originally before us in *Schell v. Miller North Broad Storage Co.*, 142 Pa. Superior Ct. 293, 16 A. 2d 680, and there, upon defendant's

appeal, we remanded the case for a new trial. The second trial ended in a compulsory nonsuit which was subsequently removed; the defendant appealed but its appeal was quashed by us; and the Supreme Court denied an allocatur. At the third trial the trial judge entered a compulsory nonsuit which the court en banc refused to remove. Plaintiff appealed, assigning as error the refusal to take off the nonsuit and several rulings of the trial judge on evidence.

When we review the refusal of a court to remove a nonsuit we examine the record to determine whether appellant established a prima facie case. *Donze v. Devlin,* 329 Pa. 1, 195 A. 882. For that purpose we assume that appellant's evidence is true, give him the benefit of every inference fairly deducible from it, and resolve all doubts, if any, in favor of a trial. *Malone v. Marano,* 326 Pa. 316, 192 A. 254. Viewing this record in that light we are of the opinion that the nonsuit should have been removed.

Appellant's goods were stored in appellee's warehouse under a bailment contract which provided: "The bailee shall be responsible for exercise of ordinary diligence and care in ...... storage ...... but not liable for loss or damage occasioned by ...... fire ......" Appellee was therefore not an insurer but it was obliged to exercise ordinary diligence and care not only to prevent a . fire from starting but also to arrest its progress. The burden of proof rested upon appellant which could be satisfied by showing, not only that he had stored his goods in appellee's warehouse and that they had not been returned to him, but that they had been lost and destroyed by a fire which was due to appellee's negligence. *Schell v. Miller North Broad Storage Co.,* supra; *Yeo v. Miller North Broad Storage Co.,* 146 Pa. Superior Ct. 408, 23 A. 2d 79; *Tubbs v. American Transfer & Storage Co.,* 297 S. W. 670; 67 C. J., "Warehousemen and Safe Depositaries", §104. To establish negligence, appellant is not con-

fined to direct proof. He may rely upon circumstantial evidence, and if the facts thus developed satisfy reasonable and well balanced minds that the loss resulted from a failure to exercise ordinary diligence and care, a prima facie case of negligence is made out. *Reardon v. Smith,* 298 Pa. 554, 148 A. 860; *Maerkle v. Pittsburgh Railways Co.,* 311 Pa. 517, 165 A. 503; *O'Brien v. Gray,* 121 Pa. Superior Ct. 27, 182 A. 746.

Appellee's warehouse, located in Philadelphia, consisted of two buildings; one fronting on Broad Street and the other on Park Avenue; the former was erected in 1913, and the latter in 1926. The Park Avenue building was so constructed that the rear wall of the Broad Street building became the front wall of the Park Avenue building. Both buildings contained six stories. Access from one building to the other on each floor was provided by permitting the apertures in the rear wall of the Broad Street building, which had been used in connection with fire escapes on that wall, to remain open. These open doorways or archways were not provided with fire doors. The warehouse contained two elevators, one of which, the number one elevator, is involved in this action. At each floor on the elevator shaft there was installed an automatic fire door, which consisted of interlocked metal strips forming a flat surface attached to a roller, the strips and the roller resembling a window shade. The roller was held by a trip lever attached to a chain and a fusible link. The fusible link was designed to melt at 165 degrees, which would permit the chain to disengage the trip lever from the roller. When the trip lever disengaged, the metal strips, if properly operating, would drop over the opening into the shaft, thus closing the shaft off from the floor.

A fire of unknown origin started on the third floor of the Broad Street building. It passed through the archway into the Park Avenue building and reached number one elevator. The fire doors of the elevator

shaft were open, and the flames, carried by the draft in the shaft, reached and melted the fusible links of the doors. But the doors did not close. The firemen who responded to the fire alarm manually closed the doors on the first, second and fourth floors, but they were unable to reach the third, fifth and sixth floors because of the intensity of the fire. The closing of the doors on the fourth floor prevented the flames from reaching that floor, but they did spread into the fifth and sixth floors. Appellant's goods were stored on the sixth floor, and they were entirely destroyed by the fire.

I. Laying to one side the absence of fire doors at the archways, and confining our attention for the moment to the fire doors at the elevator shafts, it is clear that the failure of these doors to function automatically reveals a causal connection between the fire and appellant's loss. The action of the firemen in closing the fourth floor door prevented the flames from reaching that floor, and there was no loss there. Their inability to close the doors on the third, fifth and sixth floors made it possible for the flames, originating on the third floor, to sweep past the fourth floor and reach the fifth and sixth floors. These circumstances, and the inferences which may be drawn from them, support the conclusion that the failure of the doors to operate was the direct and efficient cause for appellant's loss.

It is apparent, too, that the doors failed to function because they were defective. An automatic device is a self-activated mechanism which, after certain conditions have been fulfilled, operates without human control or supervision. Thus, a thermostat maintains the temperature of artificially heated rooms by operating the appropriate parts of a furnace when the temperature of the room exceeds or falls below the point at which it has been set. That is, a thermostat, and an automatic fire door of the type described in the evidence, which greatly resembles a thermostat, re-

spond to the stimulus of external conditions; both respond to surrounding temperatures and place in motion another connected apparatus; the one activates a furnace and the other a door. When the device fails to function it must be because (a) the device was not properly constructed, or (b) the stimulating external conditions were not present, or (c) the device, although properly constructed, has for some reason become defective. These fire doors were, according to the evidence, of the Wilson type, approved by the National Board of Fire Underwriters, and in general use throughout the country. These circumstances indicate that the automatic door was scientifically constructed, and would efficiently operate if other conditions did not supervene. The area of the fire and its intensity provided a sufficiently high temperature to melt the fusible links, but still the doors did not close. Thus, considering the possible causes that might have interfered with the proper functioning of the automatic doors, by a process of elimination, one may infer that they failed to work because they had been allowed to become otherwise defective.

This brings us to the principles of law which govern this phase of the case. Appellee contends that it installed the doors because it was required to do so by applicable statutes and ordinances, that they conformed to the requirements of the law, and that therefore it performed its full duty. This cannot be approved as a correct statement of the law. Everyone knows that even automatic devices do not continue to operate indefinitely without human attention. A prudent householder has his thermostat and the connected apparatus inspected periodically, perhaps annually, and repaired if necessary. Installing the fire doors according to a statute or an ordinance was not the full measure of appellee's duty. It was obliged to maintain them in such condition that they would perform the function for which they were installed. *DeGrazia v. Piccardo,*

15 Pa. Superior Ct. 107. Appellee could not assume, contrary to all human experience, that the fire doors would continue to operate simply because there were no obvious defects and because they had been in use for many years. It was required to maintain doors, and the doors were effective only if kept in a fit condition; it was obliged to keep them in repair; and for the purpose of making repairs it was required to make such inspections as were reasonably necessary to discover such defects as might exist. See Restatement, Torts, §300, and comment *C*. Cf. *Delair v. McAdoo*, 324 Pa. 392, 188 A. 181.

"It is negligence to use an instrumentality, whether a human being or a thing, which the actor knows or *should know* to be so incompetent, inappropriate, or *defective*, that its use involves an unreasonable risk of harm to others": Restatement, Torts, §307. (Italics supplied.) The fire doors were an instrumentality within appellee's exclusive management; their failure to work was an occurrence which a jury under all the evidence could find was one which in the ordinary course of events would not have happened if appellee had used ordinary care in maintaining them; and since appellant's loss was caused by their failure to operate, appellee was obliged to show to the satisfaction of the jury that it had used due care. *Bender v. Welsh*, 344 Pa. 392, 25 A. 2d 182, and the cases there cited. No inference of negligence can arise out of the mere fact that the doors did not close; but when that fact is considered along with and in the light of all the other circumstances, and when from those circumstances are drawn the logical and reasonable inferences to which we have already adverted, it is clear the appellant established a prima facie case. *Knox v. Simmerman*, 301 Pa. 1, 151 A. 678. In *East Broad Top Transit Co. v. Flood*, 326 Pa. 353, 355, 192 A. 401, a signal light upon an automobile truck failed to operate, and the Supreme Court held: "This ["not having the signal

light in working condition"] established a prima facie case against appellant [truck owner] because of the defective mechanism and justified a verdict against it ......" Cf. *Lerner v. Bergdoll*, 285 Pa. 193, 197, 131 A. 670. A prima facie case is made out whenever the evidence is sufficient to justify, even though it is not strong enough to compel, an inference of negligence.

II. Appellant did not voluntarily rest his case upon deductions and inferences. He sought to establish more than a prima facie case, or at least to strengthen it, by showing the exact cause for the failure of the doors to operate. He offered an expert witness, whose qualifications were not questioned, and asked him a hypothetical question, to the form or content of which no objection was made. The general objection which was made and sustained was effective only if the offered evidence was wholly irrelevant. The trial judge sustained the objection and in the opinion refusing to remove the nonsuit, the court below said: "It is obvious that an answer to this [hypothetical] question would be merely a guess or an opinion based upon mere conjecture." But the question did not call for a guess or a conjecture, and if the answer proved to be a surmise the court could have stricken it from the record and instructed the jury to disregard it. The question called for a scientific exposition of the cause which operated to prevent the doors from closing. The laymen composing the jury could deduce, as we have demonstrated, that the doors had not closed because they had become defective, but, without a further explanation by someone who was familiar with the operation and maintenance of automatic fire doors, they could hardly be expected to know the precise part of the complicated mechanism which failed to function. This is a matter requiring technical knowledge, acquired by study and observation, and the opinion of an expert is admissible in such circumstances. *Lott v. Peoples Natural Gas Co.*, 324 Pa. 517, 188 A. 582.

We have no means of knowing what the answer would have been but, if, for example, appellant wished to show that the interlocking metal, the chains or the levers had become corroded, or that they had deteriorated with the passage of time, and that these or other defects could have been discovered by an inspection, we cannot imagine a valid reason for excluding the testimony. Expert testimony has been frequently admitted to point out the *cause* for a failure of a building or equipment: the *cause* for the breaking and bending of a pipe, *Lott v. Peoples Natural Gas Co.*, supra; the *cause* for the fall of an arch in a bridge, *Hass v. White Haven Borough*, 54 Pa. Superior Ct. 75; the *cause* for the collapse of a floor, *Thorp v. Boudwin*, 228 Pa. 165, 77 A. 421. *Sweeney v. Blue Anchor Beverage Co.*, 325 Pa. 216, 221, 189 A. 331, upon which the court relied, does not rule the question here raised; there the opinion evidence was excluded for several reasons, the most important of which was that the question did not contain the essential fact "as to the force with which the bottle was toppled over." Here no objection was raised as to the form or content of the question.

III. The absence of fire doors at the archways is another circumstance upon which appellant bases his case. As we have seen, the fire started on the third floor of the Broad Street building and passing through an archway, unprotected by fire doors, reached the elevator shaft and thence spread in the manner already detailed. Appellant claims that the archway should have been equipped with fire doors, and that their absence constituted a violation of an applicable ordinance.

After the Act of May 1, 1929, P. L. 1063, 53 PS §5191, which prescribed a building code for cities of the first class, was repealed by the Act of April 14, 1937, P. L. 313, §4, 53 PS §2224, the City of Philadelphia on August 31, 1937, ordained an elaborate Building Code. It provides for, defines and regulates the construction of

fire walls and fire division walls and for the openings which may be made in such walls. Concerning such openings it ordains: "Openings may be made in fire walls and fire division walls, of the size, number and character as determined by the chief [of the bureau of building inspection] if protected by fire doors as provided herein. Each opening shall be provided with two sets of approved fire doors, separated by the thickness of the wall or division. These doors shall be constructed and hung in accordance with rules promulgated by the chief. Openings in enclosure walls of fire resistive construction, other than herein provided for, shall have metal frames or studs securely fastened to floor and ceiling. Structural members and such metal frames or studs shall be approved by the chief. No wood for framing or fastening shall be used for such openings." By another section of the ordinance, the requirement for fire walls and fire division walls is limited, in buildings of the type owned by appellee, to floors whose area exceeds 25,000 square feet, and it is admitted that the area of the floors involved here does not exceed that figure. Appellant argues that, while no fire wall was required in appellee's building nevertheless the wall between the two buildings was actually a fire wall, and that appellee was obliged to comply with the requirements concerning fire doors in the openings of that wall.

We cannot, for the purposes of this case, adopt that construction of the ordinance. However ingeniously the contention is phrased, its adoption would require appellee to maintain fire doors in the teeth of another provision which expressly exempts appellee from maintaining fire walls. The violation of a municipal ordinance is evidence of negligence. *Ubelmann v. American Ice Co.*, 209 Pa. 398, 58 A. 849. Evidence of a violation is admissible because the ordinance points out what the municipality conceives to be due care; it is "an expression of municipal opinion to aid them [the

jurors] in their deliberations": *Weinschenk v. Phila. Home Made Bread Co.*, 258 Pa. 98, 107, 101 A. 926. But unless the ordinance is clear and unambiguous, and certainly, definitely, without distorted or unnatural construction, applies to the situation before the court, it cannot be taken as an expression of the municipality's conception of due care or as a trustworthy reflection of its opinion.

IV. Appellant also contends that it was appellee's duty to close the fire doors at night. Pointing to the fact that the firemen manually closed the doors on the fourth floor and that as a result the fire did not reach that floor, appellant argues that if appellee had closed the doors on the fifth and sixth floors at the end of each day the fire would not have reached those floors. Appellee, having installed the automatic doors to meet the emergency of fire, doubtless felt that it could rely upon them and that further precautionary measures were unnecessary. However that may be, the fact is that the record does not make out a prima facie case for appellant upon this phase of his contentions. To establish a case upon this ground the evidence must show the usages and custom of warehousemen generally or owners of buildings equipped with automatic fire doors. When we leave the realm of positive duties imposed by legislation, which we have been discussing hereinbefore, the general standard of reasonable care applies, and appellee was chargeable only with that degree of diligence and care which ordinarily prudent warehousemen are accustomed to exercise under similar circumstances. 27 R. C. L., "Warehouses," §45; cf. *Rodgers v. Stophel*, 32 Pa. 111; *Moon v. First Nat. Bank of Benson*, 287 Pa. 398, 135 A. 114.

Projected against a background of evidence concerning the usages and customs of the business, the testimony of witnesses who had advised the closing of the doors at night might have been relevant. In the state

of the record as it was when they were called, the court properly excluded their testimony.

The second, sixth, seventh and eighth assignments of error are sustained; the other assignments are over-ruled; and the order refusing to remove the nonsuit is reversed with a procedendo.