## Bialek, Appellant, *v.* Pittsburgh Brewing Company.

Argued March 14, 1968. Before MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Sanford A. Middleman,* for appellant.

*Joseph A. Katarincic,* with him *J. Richard Lauver,* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for appellee.

*Norman J. Cowie,* for appellee.

*William J. Lancaster,* with him *Charles J. Duffy, Jr.,* and *Lancaster, Mentzer & Kunz,* for appellee.

OPINION BY MR. JUSTICE EAGEN, May 21, 1968:

Plaintiff instituted this action to recover for personal injuries he suffered when a bottle of beer allegedly exploded. The defendants are Glenshaw Glass Company, manufacturer of the bottle, Pittsburgh Brewing Company, the bottler of the beer, and Abraham Kronzek, the distributor who sold the beer to plaintiff. Suit was begun in assumpsit, based on breach of warranty, and in trespass, based on Section 402A of the Restatement 2d, Torts, which was adopted by this Court in *Webb v. Zern,* 422 Pa. 424, 220 A. 2d 853 (1966). Before trial, plaintiff was required to elect between the two forms and he proceeded to trial on the trespass action. The jury verdict favored defendants. Plaintiff's motion for a new trial was denied. Judgment was entered on the verdict and this appeal followed.

Plaintiff testified that about one month prior to the accident four cases of Iron City Beer, bottled by Pittsburgh Brewing Company, were delivered to his tavern by Abraham Kronzek. Kronzek stacked them in a storeroom at the rear of the tavern. On the afternoon of July 2, 1964, plaintiff went to the storeroom to get a warm bottle of Iron City Beer for a customer. He lifted the cardboard top on one of the four cases and picked up a bottle. According to plaintiff's testimony, the bottle spontaneously exploded in his hand. He denied striking the bottle in any way. After the alleged explosion, plaintiff dropped the bottle fragments, took a handkerchief from his pocket, held it over his injured eye and went for medical treatment.

Leon Dorsey, an employee at the tavern, testified that he watched plaintiff take the bottle from the case

and saw it explode in plaintiff's hand. After the acci·
dent, Dorsey swept up the broken bottle fragments and
saved them.

Dr. Scott Anderson, a physicist with experience in
glass science, testified he examined the bottle frag-
ments and found that the bottle varied greatly in thick-
ness. He considered this variation so extreme that in
his opinion the bottle was defective. Then the follow-
ing exchange occurred between Dr. Anderson and
plaintiff's counsel: "Q. Doctor, have you been able
to determine an actual cause of the fracture of this
bottle? A. I can't do it *positively* because in my opin-
ion that fracture initiated in the region of the glass that
is now missing. But the surfaces,—well, I shouldn't
say all the surfaces, but most of the surfaces, these
three in particular, are the type of surface that you get
when it has been broken by an exterior force. Because
when something is—when a piece of glass is broken—
let me illustrate this. That is considered a flat piece
of glass which is being broken by force at this point
(indicating). The glass breaks like so (indicating).
A chunk of glass comes out so that on the side away
from the force, you have a bigger area removed. And
remove that piece of glass and we have the remaining
pieces. These pieces will be beveled back, beveled
toward the inside. Now that is the case on these three,
these three fractured pieces. This surface is beveled
toward the inside. That one is beveled towards the
inside. This one up here, however, is beveled the
other way. So this is why I say that I don't think the
fracture took place right there. It took place over here
someplace (indicating). And once the piece of glass
breaks, if it is in a bottle like this, then the rules are
all off as far as whether the stresses are—Because the
thing, the fluid starts coming out and the forces just
go all haywire. And this is why I would need the

glass right at the point of origin in order to be able to *positively* say that was broken by an interior force or an exterior force. I can not possibly say."

Shortly thereafter, plaintiff's counsel asked: "Q. Doctor, from that bottle and all of your examinations, can you give an opinion as to the cause of fracture of that bottle?"

Counsel for Glenshaw Glass Company immediately objected on the ground that Doctor Anderson already had given his opinion. The objection was sustained.

Plaintiff submits here, as he did below, that he was denied the opportunity to have his expert express an opinion on the cause of the bottle's failure and consequently argues that he should be entitled to a new trial. The cause of this accident certainly was a proper subject for expert opinion. *Foley v. The Pittsburgh-DesMoines Co.*, 363 Pa. 1, 18-19, 68 A. 2d 517, 525-26 (1949) ; *Schell v. Miller North Broad Storage Co., Inc.*, 157 Pa. Superior Ct. 101, 110, 42 A. 2d 180, 184 (1945) affirmed, 353 Pa. 319, 45 A. 2d 53 (1946) (per curiam). The lower court recognized this, but reasoned that Dr. Anderson had testified that he could not express an opinion on the cause of the bottle's failure and consequently all subsequent questions on this point were properly excluded.

We disagree. Dr. Anderson testified only that he was unable to give a *positive* opinion on the cause of the bottle's failure. This is not inconsistent with his ability to form an opinion based on less than certain evidence. A precise scientist who bases his opinion on an appraisal of probabilities is nonetheless an expert. In our view his opinion deserves jury consideration. Thus the trial judge did err in depriving plaintiff of the opportunity to have his expert express a full opinion on the cause of the bottle's failure.

The prejudice to plaintiff resulting from the exclusion of Dr. Anderson's opinion was severe. The

severity of the prejudice is best demonstrated by the lower court's reasoning with respect to the second ground on which plaintiff asks for a new trial.

The trial judge charged the jury as follows: ". . . the first question you should ask in analyzing this testimony is: Was this blow, this severe blow that caused the breakage of the bottle caused by the plaintiff or someone not a party to this action? That is number one in your approach. Was this severe blow that caused the breakage of the bottle caused by the plaintiff or someone else not a party to this action? This is the first question. . . . if the answer to that first question that we quote, that is to say, was [t]his severe blow the cause of breakage of the bottle, was that caused by the plaintiff or someone not a party to this suit. Now if the answer to that first question is yes, that is to say that the plaintiff or someone not a party to this action, caused the blow, caused the breakage of the bottle, then the plaintiff can not recover. And your verdict should be for the defendants."

Plaintiff submits here, as he did below, that this assumes the main disputed fact, i.e., whether the bottle's failure was caused by internal pressure, resulting in an explosion, or by an external force. The lower court concluded that the charge does not assume a disputed fact because it was undisputed that the cause of the bottle's failure was an external blow. To support this conclusion, the lower court opinion cites two passages from Dr. Anderson's testimony which are interpreted to mean that the bottle's failure was caused by an external blow. The appellee's briefs adopt this argument, citing other passages from Dr. Anderson's testimony and construing them similarly. It might be expected that a jury would have the same impression.

Actually the lower court's suggestion that Dr. Anderson testified to the effect that the bottle's failure

was caused by an external blow not only is inconsistent with its position that Dr. Anderson said he could not express an opinion, but also is a distortion of what Dr. Anderson said.

Specifically, Dr. Anderson testified on cross-examination that the bottle's fracture was *"initiated by an external force."* First, although a severe blow is an "external force" not every external force is a severe blow. In fact, a hand gripping a bottle is an external force. Second, to say that the bottle's fracture was "initiated" by an external force is not equivalent to saying that it was *caused* by an external force. Another passage from Dr. Anderson's testimony suggests how he used the word "initiate." Speaking of a hypothetical bottle, Dr. Anderson said: "In an actual case, you frequently have several things operating. You can have pressure and the pressure on the inside is almost at the limit at which this container can stand. And then a relatively slight external blow initiates a fracture."

In such a hypothetical case, the slight external blow no more causes the fracture than the proverbial straw causes the camel's back to break. Although the last straw precipitates the break, certainly the break can be said to have been caused by factors other than the last straw, notably the remainder of the burden.

The lower court quoted another passage from Dr. Anderson's testimony: "Q. And isn't that typical of the type of crack produced by external force? The crack leading to the inside surface? A. It is definitely typical of the thing that is being hit from the outside."

This question and answer appear not to refer to the particular bottle involved in this case. The exchange occurred during cross-examination in the midst of a long series of questions concerning a Glenshaw

184

Glass exhibit of a bottle broken by external force. The answer appears to refer either to the Glenshaw Glass exhibit or to a hypothetical bottle broken by external force. Even if this appearance is incorrect and the answer does refer to the particular bottle involved in this accident, other parts of Dr. Anderson's testimony indicate that after the fracture begins and the enclosed fluid starts to escape "the forces just go all haywire." That is to say, glass in regions other than where the fracture began may show characteristics of a break caused by external force although the region where the fracture actually began broke because of internal pressure. Consequently the fact that the bottle in the case shows evidence of external force does not compel the conclusion that in Dr. Anderson's opinion the bottle's failure was caused by external force.

Not only was Dr. Anderson's testimony consistent with his holding an opinion that internal pressure on the defective bottle caused an explosion, his carefully qualified answers actually suggest that this was his opinion. If Dr. Anderson had been permitted to give his opinion, he might well have clarified the trial judge's and the jury's understanding of his other testimony. Thus the importance to plaintiff of Dr. Anderson's opinion was clearly great and its exclusion can only be considered severely prejudicial.

Quite apart from what Dr. Anderson would have given as his opinion, whether favorable or unfavorable to plaintiff, it certainly was improper for the trial judge to assume in his charge to the jury that the cause of the bottle's failure was a severe blow. Contrary to the lower court's opinion, this central point was not undisputed. Both plaintiff and Leon Dorsey testified that the bottle exploded spontaneously. Their testimony alone, given the fact that an explosion was not a physical impossibility, was sufficient to make the issue a jury

question. Thus the assumption in the charge that the bottle failed because of an external blow was clearly reversible error. *Elkins, Bly & Co. v. McKean*, 79 Pa. 493, 501 (1876); *Garrett v. Gonter*, 42 Pa. 143 (1862); *Smith v. Clark*, 411 Pa. 142, 190 A. 2d 441 (1963).

Since plaintiff is entitled to a new trial, it is appropriate for us to consider several other issues raised by the parties which probably will be encountered again.

In the course of the trial, Pittsburgh Brewing Company introduced evidence on its bottling process, indicating the pressure to which a bottle is subjected during pasteurization and capping. This evidence tends to show that when the bottle involved in this accident left the control of Pittsburgh Brewing Company, it was not defective or unreasonably dangerous, an issue clearly relevant under Restatement, 2d, Torts, §402A. Because the evidence also tends to show due care, which is irrelevant under §402A, plaintiff contends that its admission misleads the jury into believing that the plaintiff must show negligence on the part of the defendants. The objection is not sufficient to bar the admission of this evidence. It is elementary that evidence admissible for one purpose is not rendered inadmissible because it would be inadmissible for another purpose and because the jury might improperly consider it for that other purpose. I Wigmore, Evidence §13 (3d edition 1940). To avoid improper use by the jury, the trial court should clearly instruct them, as it did in this case, that plaintiff is not required to prove that the defendants were negligent, that the defendants can be liable even if they exercised all possible care and that no consideration should be given to negligence.

The following passages in the jury charge appear to have caused some confusion:

"The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff . . .

"The plaintiff, as we said before, in order to recover is bound to produce competent evidence that the bottle was in a defective condition at the time that it left the hands of the particular seller . . .

"If you find that the plaintiff has met the burden of proof as outlined and if you find that an unreasonably dangerous condition was created *or existed* in the hands of the distributor, then your verdict would be in this form: We find a verdict for the plaintiff in the sum of so much and against the defendant, Abraham Kronzek, trading and doing business as Craft Distributing Company and in favor of the defendants, Pittsburgh Brewing Company and Glenshaw Glass Company.

"If you find that the Pittsburgh Brewing Company to have created an unreasonably dangerous condition that caused the injury, then your verdict would be in favor of the plaintiff and against the defendant, Pittsburgh Brewing Company and against the distributor, Abraham Kronzek, trading and doing business as Craft Distributing Company.

"If you find that the defendant, Glenshaw Glass Company, to have created this unreasonably dangerous condition which caused the injury to the plaintiff, then your verdict would be against all of the defendants and your verdict slip would read: We find a verdict in favor of the plaintiff in the sum of so much and against the defendants." (Emphasis added.)

As plaintiff interprets this language, he has the burden of proving which particular seller in the chain caused the defect. Glenshaw Glass Company argues

that plaintiff should bear this burden. If the charge placed on plaintiff the burden of proving which of the multiple defendants caused the defect, we would agree with plaintiff that it would be incorrect. The language of §402A,[1] its rationale,[2] and its illustrative application in the Restatement comments,[3] indicate that for liability to attach the seller need only sell a defective product, not that he also must have caused the defect.

In fact, the charge cannot be fairly interpreted to place the burden on plaintiff of proving which defendant caused the defect. The first two sentences, which appear in comment g of the Restatement §402A, require only that plaintiff prove that the product was in a defective condition at the time it left the hands of the particular seller, not that plaintiff prove that the particular seller caused the defect. The remainder of the charge, with the exception of the emphasized

---

[1] "(1) One who *sells* any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Emphasis added.)

[2] Comment c, and to some extent comment f also, indicates that §402A is based on the theory that a seller is a "better risk bearer," i.e., can spread the cost of accidents resulting from his product through its price and liability insurance. Strict liability itself indicates that liability is not based on fault. To require that plaintiff prove that the seller caused the defect would be inconsistent with the "better risk bearer" theory and would revert to fault as the basis of liability.

[3] See comment 1 on p. 355.

words which should be deleted, simply make the obvious point that sellers in a distributive chain who precede a seller that caused the defect could not have sold the product in a defective condition. In the context of this case, if Dr. Anderson is believed, the bottle was defectively manufactured by Glenshaw Glass Company and consequently Glenshaw as well as all successive sellers of the defective product are liable. This is not because they caused the defect, but because they sold the defective product. If the parties think that the charge might mislead the jury on this point, they might submit special points for charge with respect to it.

The reasonableness of requiring plaintiff to elect between assumpsit and trespass before trial has been attacked. Long ago it was decided in Pennsylvania that such an election is required. E.g., *Pennsylvania R. R. Co. v. Zug*, 47 Pa. 480 (1864) ; *Noble's Administrator v. Laley*, 50 Pa. 281 (1865). Until the forms of action are abolished, it appears we cannot properly eliminate this requirement. At any rate, the election cannot harm plaintiff since amendment of the form of action is liberally permitted under Pa. R. C. P. 1033.

Reversed and remanded for a new trial.

Mr. Chief Justice BELL and Mr. Justice ROBERTS took no part in the consideration or decision of this case.