**Pullicino v. Perdue Farms Inc.**

470

*Turrey A. Kepler,* for plaintiff.
*Steven C. Tolliver,* for defendant Perdue Farms Inc.
*Frank E. Noyes II,* for defendant Charles Ritter Inc.

KLEIN, R.B., *J.,* June 9, 1993 —

## SUMMARY

On August 29, 1984, the plaintiff, John Pullicino, was unloading a shipment of Perdue chicken products as part of his duties as a boxman at Acme Markets. The handle area of a cardboard box of chickens he was unloading broke, and Pullicino severely injured his right hand, arm and fingers. Defendant, Charles Ritter Inc. distributed and sold Perdue chicken, and delivered the shipment of chicken to the store. Defendant, Perdue Farms Inc., produced, packaged, marketed and sold the chicken products that were within the box that broke.

Unfortunately, Acme destroyed the broken box after the chicken was unpacked, following the store's normal practice. Because the box was destroyed soon after the accident, it was impossible to identify the manufacturer with certainty. This box was only used to transport chicken from Perdue to Acme, but a number of different manufacturers make boxes to Perdue's specifications. It also is impossible to determine exactly why the handle gave way or when during manufacture or subsequent thereto the problem arose.

Summary judgment has already been granted for the various manufacturers that made and sold boxes to be used to ship Perdue chickens, since there is no way of knowing whose box broke.

Pullicino also sued Perdue and Ritter, respectively the producer and distributor of the chicken. He sued both in negligence and strict liability. He cannot meet his burden of proof against Perdue, since the box might have been damaged when in the hands of Ritter. Therefore, Pullicino cannot show that it is more likely than not that the box was defective when it left Perdue's hands. However, he can make out a §402A claim against Ritter, the distributor.

There is no showing how the handle weakened and who, if anyone, was negligent. The problem could have arisen when the box was in the control of the unknown manufacturer, Perdue, or Ritter.

However, it is clear that the handle was defective while in the Ritter truck and when Pullicino lifted it out of the truck. The issues then become whether Pullicino is a "user" of the box and whether Ritter is a distributor of "boxes."

There is no substantial allegation that the box was improperly designed to carry chickens or that any warning would have helped. The handles were there for the purpose of lifting the box. The problem with the handle on this box was not obvious, and a visual inspection of the box would not have revealed anything.

## NEGLIGENCE COUNT

There is a negligence action against Perdue and Ritter for failure to use reasonable care in handling and inspecting the box. However, Pullicino cannot meet this burden of proof. It is just as likely that there was some defect in the manufacture of the box as it is likely that the box was mishandled by anyone. Even if there were mishan-

dling, there is no way to tell whether Perdue mishandled it or whether Ritter mishandled it.

## STRICT LIABILITY COUNT AGAINST PERDUE

There is also a count in strict liability for

(a) using product packaging which was unable to withstand normal handling procedures; and

(b) failing to warn handlers such as Pullicino of the inherent dangers.

Pullicino may not bring a claim under strict liability against Perdue because there is no showing of a design defect or a lack of warnings and there is no showing there was anything wrong with the hand-holes at the time Perdue gave up control of the box.

(1) Factually there is no showing that there is any problem with a box with hand-holes. The plaintiff's expert, Alfred H. McKinlay, P.E., said that having hand-holes makes boxes safer, since there is less risk of accidental dropping than if the box is held from the bottom. The expert testimony only points out that if the box was subjected to mishandling, such as an extended period in freezing conditions, it could have broken.

(2) There is no showing that there was anything wrong with the box when it left Perdue's hands. Plaintiff's expert cannot pinpoint when the handle failed. He just said that "Somewhere in the distribution process one hand-hole became defective." Therefore, it may have become defective *after* it left Perdue's control, because something happened while it was at Ritter's.

## STRICT LIABILITY COUNT AGAINST RITTER

There is a different issue with respect to Ritter. Pullicino cannot show that Ritter was negligent. He cannot show it is any more likely that Ritter mishandled the product than that it was initially manufactured with a defect or was damaged by Perdue before Ritter received the product.

The issue becomes whether Ritter can be held strictly liable for "distributing" a defective box. If Ritter is considered a distributor of boxes, the claim can be made that, as a middleman, Ritter "sold" or "distributed" a defective "box of chickens."

Under the doctrine of *res ipsa loquitur*, Ritter can be held liable under §402A of the Restatement of Torts. Pullicino can show that the box handle would not have broken if the box was not "defective" from some cause (manufacture or negligent handling) at the time it was being unloaded from the truck.

Defendants argue that the product was the chicken, not the box, and the ultimate consumer was the person shopping at Acme, not Mr. Pullicino working for Acme unloading trucks. However, with respect to the box, the handlers at Perdue, Ritter and Acme *are* the ultimate users of *the box*. The box is thrown away after it is unloaded at Acme. It is never "used" by the customer for the Perdue chicken parts at the store.

The cases are clear that someone who is not the ultimate user can also recover under §402A. For example, all the forklift cases involved workers, who also can receive compensation benefits. In *Bialek v. Pittsburgh Brewing Co.*, 430 Pa. 176, 242 A.2d 231 (1968), a bartender was allowed

to recover under §402A when the bottle of Iron City Beer he went to get for a customer exploded, injuring him.

Further, Pullicino can be considered the ultimate user of the box. If we knew who the manufacturer was, and if an expert could pinpoint the problem at the time the box left the box factory, Pullicino could recover from the manufacturer.

Although it is a close question, under Pennsylvania law Ritter can be held liable. The focus is on the product. The product must be defective when it leaves the Ritter truck. It does not matter if it is defective because of manufacture or negligent handling.

The test on whether or not Ritter distributes "boxes" has arisen primarily from exploding bottle cases. Although Coca Cola sells the soda and not the bottle, they cannot sell the drink without the packaging. Therefore, they are liable for defects in the packaging (the bottle) even if they did not make the bottle and their business is soda, not glass.

The test is whether the "box of chickens" is an inseparable product such as the Coke and a glass bottle. It certainly is not an inseparable product as far as the consumer of the chicken is concerned. He or she ultimately buys the packaged product from the produce case. However, Ritter, as distributor, cannot sell the chickens in bulk. They have to ship them in something or the supermarket will not buy them. Therefore, the product they buy from Perdue and sell to Acme is a total "box of chickens." Therefore, they are responsible for any defects in any of the product, from the chicken itself to the bag or wrap in which the individual chicken pieces are pack-

aged to the box in which the individual packages are shipped.

It is true that this might work an injustice against Ritter. The box was destroyed, through no fault of Pullicino, Ritter, Perdue or any of the box manufacturers. Therefore, Ritter has no way of showing whether the defect was caused while in its hands, at Perdue, or at the box factory. However, the principle of strict liability is that if there are two people, and neither can be shown to be at fault, the seller of the product must pay. It is the seller that can spread the risk over all products sold. Pullicino does not have that ability. It is true that if Pullicino had destroyed the box, this might preclude his claim. But he had nothing to do with the destruction. Although it would be more just if Ritter could ascertain whether Perdue was at fault or if some box manufacturer was at fault, it is only the fault of Acme that this is impossible. Pullicino should not suffer because Acme threw the box away. Because Ritter makes a profit from selling "boxes of chicken," and the box was certainly defective when it was turned over to Acme from the Ritter truck, Pullicino is not precluded from making out a case against Ritter.

Moreover, in *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 188, 242 A.2d 231 (1968), the court allowed recovery against the bottler and distributor of an "exploding bottle" although the fault may have been with the glass company. The court said, "all successive sellers of the defective product are liable. This is not because they caused the defect, but because they sold the defective product."

Therefore, defendant Perdue's summary judgment motion is granted and defendant Ritter's summary judgment is denied.

## ORDER

And now, this June 9, 1993, upon consideration of the motions for summary judgment of defendants Charles Ritter and Perdue Farms Inc., the responses thereto and oral argument held thereon, it is hereby ordered and decreed that:

(1) Defendant Perdue Farms, Inc's. motion for summary judgment is granted; and

(2) Defendant Charles Ritter's motion for summary judgment is denied.