Rodgers, Appellant, v. Sun Oil Company.

560

[black bars]

Argued March 17, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Angelo A. Guarino,* with him *Samuel M. Sharkis,* for appellant.

*Richard W. Hopkins,* with him *White and Williams,* for appellee.

OPINION BY HIRT, J., June 10, 1959:

In mid-afternoon of March 26, 1956 plaintiff drove his automobile to the defendant's service station at Allegheny and Hunting Park Avenue in Philadelphia. The attendant in charge, one Bencker, at plaintiff's request, tightened the emergency brake and adjusted it for normal functioning; he also refueled the car and lubricated the differential. This done, plaintiff asked Bencker to run Bardahl through the engine. Bardahl is the trade name of a chemical compound, with a light oil base, which is used to free sticky valves and to burn out carbon in an automobile engine. Sun Oil Company did not stock Bardahl, and as a substitute the attendant sold plaintiff a comparable compound known as Suntune. After plaintiff set the emergency brake and shifted the control lever to neutral Bencker removed the air cleaner and, with the engine running, poured a part of the Suntune into the carburetor. Dense smoke from the exhaust, characteristic of the operation poured into the station, and for that reason the plaintiff at the request of Bencker moved his car to the other side of the station lot near a fence. There plaintiff again set his emergency brakes and he testified that he "put the car in neutral" as he had been instructed to do, but Bencker did not check to see that this was done. The automobile was a 1948 Oldsmobile with hydramatic drive. Hydramatic was the trade name adopted by General Motors Corporation for the automatic drive mechanism on the cars of its constituent manufacturers. In a car with this type of transmission the shift of the driving lever is from neutral to forward drive, or from neutral to reverse. Plaintiff was standing nearby when Bencker accelerated the engine and resumed the pouring of the Suntune through the carburetor. During the process the car suddenly lurched forward and hit the fence. Plaintiff was

knocked to the ground, and on the rebound from the fence, the car ran over plaintiff's ankle. In this action for damages for personal injuries the jury found for the plaintiff in the sum of $2,000.

In *Kiska v. Rosen,* 181 Pa. Superior Ct. 506, 508, 124 A. 2d 468, we, quoting from *Mozino v. Canuso,* 384 Pa. 220, 223, 120 A. 2d 300, said: "One who appeals from the grant of a new trial assumes a very heavy burden indeed. Before we will reverse, the appellant must be able to show that the trial court was guilty of a palpable abuse of discretion or acted on an erroneous rule of law which, in the circumstances, controlled the outcome of the case and is certified by the trial court as the sole reason for the granting of a new trial." That is a terse statement of the general principle governing an appeal from the order of a new trial. And in the *Kiska* case, we also said: "The granting of a new trial on the ground that the verdict is against the weight of the evidence is peculiarly for the court below. Savitz v. Gallaccio, 179 Pa. Superior Ct. 589, 118 A. 2d 282."

Plaintiff was a business invitee and defendant owed him the duty of reasonable care for his safety. But after plaintiff moved his car to the designated place on defendant's lot, when Bencker told him to put the lever control in neutral, there was no obligation on Bencker to check his action in that respect to determine whether he had followed the instruction. From the fact that the car lurched forward with the emergency brakes set it is at least equally probable that the transmission lever was in drive and not in neutral position when he parked the car near the fence. But in any view, more than an expression of plaintiff's theory as to what caused the parked automobile to lurch forward, was required.

The only testimony of negligence chargeable to the defendant was that of plaintiff himself, to this effect:

that with the emergency brake set, the attendant Bencker accelerated the engine to such a degree that the resulting vibration caused the hydramatic transmission to shift from neutral to drive causing the car to lurch forward, to the plaintiff's injury. And it was plaintiff's contention that the defendant was liable on the ground that Bencker should have foreseen the probability of that result under the circumstances. The trial judge properly sustained the defendant's objection to this testimony on the ground that plaintiff did not qualify as an expert as to the effect on the hyramatic transmission of excessive vibration of the car. Essentially the same testimony however was before the jury in a deposition of the plaintiff, taken before trial, which had been admitted in evidence without objection. And it was upon this testimony that the jury charged the defendant with negligence in finding for the plaintiff. The deposition was not relevant proof of negligence; it was offered by the defendant solely for impeachment purposes and although received in evidence without objection it did not become substantive evidence of its content. Under Pennsylvania Rule 4020(d)-1 of Civil Procedure the offer of the deposition for the purpose of impeachment of plaintiff did not make the deponent the witness of the defendant.

The lower court properly refused to enter judgment for the defendant; judgment n.o.v. could not have been entered on the diminished record after elimination of the incompetent testimony of the plaintiff (*Cherry v. Mitosky*, 353 Pa. 401, 45 A. 2d 23; *Murphy v. Wolverine Exp. Inc. et al.*, 155 Pa. Superior Ct. 125, 38 A. 2d 511) and the grant of a new trial was the only alternative.

Order affirmed.