441 A.2d 365

**John A. WALSH and Patricia E. Walsh, his wife, Appellants,**

**v.**

**James Wesley SNYDER.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1980.

Filed Nov. 13, 1981.

Reargument Denied March 3, 1982.

Petition for Allowance of Appeal Denied March 19, 1982.

Alfred J. Duff, Pittsburgh, for appellants.

Robert S. Garrett, Pittsburgh, for appellee.

Before HESTER, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

Appellants were denied a new trial by the court below related to an action they brought which alleged the appellee's actions harmed the appellants by aggravating a preex-

isting heart condition had by appellant.[1] The trial court excluded deposition testimony of the treating physician from going to the jury because the court held his statements regarding aggravation of a preexisting condition would leave the jury with purely speculative judgments with regard to damages. Damages in the amount of $35,000 for Mr. Walsh and $5,000 for Mrs. Walsh were awarded for injuries apart from any claim of aggravation. We reverse the decision of the trial court.

On January 25, 1975, John Walsh and James Snyder were involved in an automobile accident. Mr. Snyder was clearly at fault.[2] Several days later, Mr. Walsh found he could no longer bear the pain and discomfort arising from injuries he sustained. He then sought and received medical treatment for various symptoms manifested in the form of pain in his lower back, neck, and numbness in his hands. Physicians eventually determined his symptoms to be caused by injuries to his spinal cord. Appellant filed an action for damages arising from these injuries in November of 1976.

In September of 1977, appellant suffered from additional symptoms indicating poor health. He developed shortness of breath. On September 13, 1977, he sought the aid 'of Dr. Samuel I. Han. Dr. Han ordered appellant admitted to a hospital and various tests were performed which showed a 15 to 20 percent blockage of one artery. Treatment followed, not involving surgery, however, ten months later, appellant's condition had so deteriorated that more tests were ordered. These tests demonstrated that the partially blocked artery was now 70 to 80 percent occulled. Open-heart surgery was performed, shortly thereafter. On December 8, 1978, Mr. Walsh was permitted by the trial court to amend his original complaint to include damages arising out of his heart condition which alleged an aggravation of a *preexisting* coronary artery disease and mental stress.

1. Restatement (Second) of Torts § 461 states an actor may be liable for aggravation of a preexisting physical condition unknown to him. *Kravinsky v. Glover*, 263 Pa.Super. 8, 396 A.2d 1349 (1979); *Boushell v. Beers*, 215 Pa.Super. 439, 258 A.2d 682 (1969).

2. Fault for the accident is not an issue in the instant case.

Mr. Walsh attempted to admit into evidence, at the subsequent trial, a deposition taken of Dr. Han, in which Han stated that the emotional stress caused by the accident substantially aggravated Walsh's preexisting heart condition. The appellee objected to the use of this testimony and the trial court sustained the objection. The trial court determined the deponents statements would have left the jury with purely speculative evidence as to damages. The appellants, sometime later, petitioned for a new trial, and their request was denied. They appeal from the denial of a new trial.

Our scope of review in the instant case is limited. In *Ditz v. Marshall*, 259 Pa.Super. 31, 35, 393 A.2d 701, 703 (1978), we said:

> The decision of the lower court, either granting or refusing a new trial, is considered to be within the sound discretion of the trial judge and will be reversed on appeal only if the appellate court determines that the trial court palpably abused its discretion. [Citation omitted.]

*Myers v. Gold*, 277 Pa.Super. 66, 69, 419 A.2d 663, 664 (1980). We find that a reversal is appropriate in the instant case.

The quantum burden of proof required for a verdict for the plaintiff in a negligence case is a preponderance of the evidence. As was stated in *Hamil v. Bashline*, 481 Pa. 256 n.9, 392 A.2d 1280 n.9 (1978), regarding the plaintiff's burden of proof:

> [The burden of proof required of plaintiff] is made clear in Comment (a) to Section 433B of the Restatement [Restatement (Second) Torts]:

>> "a. Subsection (1) states the general rule [that the burden of proof as to causation is on the plaintiff]. As on other issues in civil cases, the plaintiff is required to produce evidence that the conduct of the defendant has been a substantial factor in bringing about the harm he has suffered, and to sustain his burden of proof by a preponderance of the evidence. This means that he must make it appear that it is more likely than not that the conduct of the defendant was a substantial factor in

bringing about the harm. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

■ In satisfying its burden, the plaintiff should indicate to the court the factors which contributed to the harm and their number and, as stated in the Restatement (Second) of Torts § 433(b):

(b) Whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible.

See, *Commonwealth v. Janek*, 242 Pa.Super. 340, 363 A.2d 1299 (1976) (Concurring Opinion, Spaeth, J.); *Wisniewski v. The Great Atlantic and Pacific Tea Company*, 226 Pa.Super. 574, 323 A.2d 744 (1974).

■ And finally, of clear relevance to the instant case is § 433A of the Restatement (Second) of Torts which provides:

§ 433A, Apportionment of Harm to Causes

(1) Damages for harm are to be apportioned among two or more causes where

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more cases.[3]

---

**3.** A helpful discussion of this principle is found in Comment e to the Restatement (Second) of Torts § 433A. It states:

e. *Innocent Causes.* The same kind of apportionment may be made where a part of the harm can fairly be assigned to an innocent cause, . . . . There may also be apportionment between harm which results from a preexisting condition, for which the defendant is in no way responsible, and the further harm which his tortious conduct has caused.
Illustrations:
6. . . .

§ 433 is a substantial condition of the common law principle discussed in *Offensend v. Atlantic Refining Co.*, 322 Pa. 399, 185 A. 745 (1936).

The relevant portions of the testimony of Dr. Han, out of which this conflict arises, were cited at length by the trial court at pages six through ten of its opinion. The relevant portions of those statements include:

Q   Was it your original thought to continue treating him before there was any surgery?

A   Well, initially because the first cardiac catheterization shows only minimal obstruction on one artery and total occlusion on the other artery, it is felt that the patient can be treated medically if we can reduce his chest pain. However, if we cannot, surgery would be recommended.

Q   You were continuing to treat him in an effort to determine whether or not you could medically resolve his problems or whether surgery ultimately would be required.

A   In other words, even if I continued to treat him in the future, I still may recommend surgery if he didn't go to surgery on his own.

Q   I see. Would you be able to say with any degree of medical certainty when Mr. Walsh might have needed surgery for his coronary artery disease if he had any emotional stress? It gets back to the question of aggravation perhaps hastening the onset of the problem or increasing the symptoms that the person would feel.

Is there any way that you could estimate how much sooner he might have required coronary surgery as a result of the emotional stress?

A   There is no way I can determine how much the stress will aggravate the progress of coronary artery disease.

7.   . . .

8.   A suffers from arthritis in his arm, as a result of which he has a 50 percent disability in the use of his arm. He is struck by an automobile negligently driven by B, and the injury aggravates the arthritis so that he loses the use of the arm entirely. B may be held liable for 50 percent of the injury.

Q   In other words, all you can say is emotional stress aggravated a pre-existing coronary artery disease of Mr. Walsh.  You have no way of fixing the degree in terms of time of onset or progress of the problem or a degree as a factor in the problem;  is that fair to say?

A   That is right.

The doctor also indicated that the appellant's physical condition and habits apart from his heart, that is to say his obesity and smoking, aggravated his heart condition.   He said:

Q   Fundamentally we are dealing with a pre-existing coronary arterial disease that is a progressive condition; am I correct, doctor?   It is a progressive condition.

A   It is.

Q   In fact to a certain extent it is progressive in Mr. Walsh's case even though he has had the surgery;  isn't that true?   The tendency in his body is there, still there?

A   Yes.   It still might progress after the surgery.

Q   Just to go back again to that though, doctor, what is meant by the term "aggravation"?   If I understand you correctly, the onset or the need of surgery here may have been aggravated or the time in which surgery was needed may have been hastened by a number of factors;  is that correct?   In other words, given a different set of factors but the same body as Mr. Walsh had, the same condition that he had, the time when he might need surgery might have been a little sooner or a little later depending on how these factors might have affected him.

A   Yes.

Q   For instance, if he had been a little less obese or heavy, he hadn't smoked cigarettes, he might have gotten along a little further in life without having surgical intervention;  but he still would have had to have it eventually.

A   Right.

Q   Would it be true then that as far as heart surgery is concerned, he was going to have that sometime anyway whether or not he had any emotional stress factors present;  is that true?   The emotional stress did not make

the surgery necessary, but the surgery was necessary based on the underlying factors that were present and operating in Mr. Walsh's body. Is that true?

A Yes.

Thus, the appellant had a preexisting heart condition which was already aggravated by obesity and smoking which the treating physician states would have, even had no accident ever occurred, had eventually required surgery. Therefore, the trial court needed to determine whether the aggravation caused to appellant's condition as a result of the accident was quantifiable.

The appellee's attorney stated their position to the court arguing that the testimony of Dr. Han should not be admitted in the following manner:

> Our position of the Defendant is that the issue here is, as stated in our initial trial brief for the Defendant, where the treating physician testifies he cannot state emotional stress from an automobile accident caused the Plaintiff's coronary artery disease and states only that such emotional stress produced such a substantial aggravation of a preexisting coronary artery disease, but cannot state what injuries or damages Plaintiff sustained by such aggravation or state to what degree Plaintiff's condition was intensified, increased or worsened by aggravation, there is insufficient medical testimony on which the jury may base any determination as to what damages are recoverable for lost wages, for medical treatment, including surgery, and for pain, suffering and inconvenience owing to aggravation of coronary artery disease by emotional stress.

The appellant argues that our discussion in *Kravinsky*, supra, clearly indicates that we must decide in his favor. In *Kravinsky*, supra, an automobile accident case, the trial court held that expert testimony was not sufficiently certain to establish causation between the accident and aggravation of a preexisting psychological disorder. We held:

> However, to make an admissible statement on causation, an expert need not testify with absolute certainty or rule out all possible causes of a condition. *Bialek v. Pittsburgh*

*Brewing Company*, 430 Pa. 176, 242 A.2d 231 (1968); *Ritson v. Don Allen Chevrolet*, supra [233 Pa.Super. 112, 336 A.2d 359]. Expert testimony is admissible when, *taken in its entirety*, it expresses reasonable certainty that the accident was a substantial factor in bringing about the injury. *Hussey v. May Department Stores Inc.*, supra, 238 Pa.Super. [431] at 437, 357 A.2d [635] at 638. The expert need not express his opinion in precisely the same language we use to enunciate the legal standard. See *In re Jones*, 432 Pa. 44, 246 A.2d 356 (1968) (medical testimony need not conform to precise statutory definitions). That an expert may, at some point during his testimony, qualify his assertion does not necessarily render his opinion inadmissibly speculative.

*Woods v. Pleasant Hills Motor Company*, 454 Pa. 224, 309 A.2d 698 (1973); *Commonwealth v. Joseph*, 451 Pa. 440, 304 A.2d 163 (1973).

Applying the above standard to the instant case, we conclude that Dr. Ascher's expert testimony was sufficiently definite and certain to establish a causal link between the collision of May 22, 1970 and Mrs. Kravinsky's driving phobia. His initial statement that he felt that the collision was a significant cause of her phobic condition clearly expresses a professional judgment of reasonable certainty. *Euker v. Welsbach Street Lighting Co. of America*, 149 Pa.Super. 78, 25 A.2d 758 (1942). That he characterized the collision as a "significant cause" rather than a "substantial factor" makes no difference, *In re Jones, supra;* the testimony established proximate cause, *Hamil v. Bashline, supra; Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965); Restatement (Second) of Torts, § 432 (1965). His subsequent testimony that there was not one overriding factor contributing to Mrs. Kravinsky's problem in no way contradicted his initial statement; rather, it underlined his belief that no one factor was solely responsible for her phobia. *Diakolios v. Sears Roebuck & Co.*, 387 Pa. 184, 127 A.2d 603 (1956). Moreover, Dr. Ascher's unequivocal testimony that "[i]t

was [his] opinion that her behavioral difficulty obviously began on May 22, as a result of that accident" left no doubt that in Dr. Ascher's professional opinion the collision caused the aggravation of Mrs. Kravinsky's condition. Her "behavioral difficulty", described in Dr. Ascher's prior testimony as her temporary refusal even to enter an automobile, followed by her continued inability to drive in a normal fashion, precisely defined the manifestations of her driving phobia. Viewing all of the Dr. Ascher's testimony, we conclude that the lower court was correct in finding that his testimony established, with reasonable certainty, that the May 22, 1970 collision was a substantial factor in bringing about Mrs. Kravinsky's driving phobia. [Footnotes omitted.]

Thus, the testimony of Dr. Han is that the accident played a substantial role in aggravating a preexisting condition. Though the need for surgery may have indeed been inevitable, the accident may have aggravated that condition and hurried the onslaught of a crisis.[4] We do not decide

4. In *Schultz v. City of Pittsburgh*, 370 Pa. 271, 88 A.2d 74 (1952), Mr. Justice Musmanno wrote for our Supreme Court that the duration of time which the aggravation caused an eventual crisis to hasten is a matter to be left to the jury. He opined in discussing that court's earlier decision in *Offensend v. Atlantic Refining Co.*, supra.

The court concluded that in the absence of any expression of opinion by medical experts as to the duration of the increased inflammation resulting from the injury, the jury could not be allowed to assess damages for so long a period of time, stating "the jury should not have been allowed to hazard a guess beyond the period shown with reasonable certainty." However, the court did say that though the doctors failed to testify as to the length of time the effects of the aggravation of the preexisting condition would continue, "it would be legitimate to draw the inference that they did not subside immediately, warranting recovery for the suffering, medical costs, and loss of earnings for a reasonable time thereafter." In the instant case there is nothing to indicate for how long a period of time the jury assessed damages. *It had the right, even in the absence of any expression of medical opinion as to the duration of the disability, to assess damages for a reasonable time,* and the amount of the verdict does not so shock our sense of justice as to force us to conclude that the jury abused that right. (emphasis added)

Thus, when the trial court at pages 5 and 6 of its opinion that:

whether that would have been the proper decision in the instant case, rather we hold that there was sufficient evidence to permit the jury to hear Dr. Han's testimony. Clearly, the damages would be difficult to ascertain, however, this court has not held plaintiffs in such actions to a very rigorous standard of exactness in this regard. We have held that these questions are best suited for juries. Accordingly, we reverse the decision of the trial court and order a new trial where Dr. Han's testimony is to be admitted.

It has been the policy of this court and our Supreme Court to assure that each tort feasor compensate the injured plaintiff for the wrong he has done him. We do not decide that such a compensatable harm occurred in the instant case but hold that the trial court abused its discretion in not granting a new trial where relevant testimony should have been heard by the jury and was not.

Order of the trial court reversed. New trial is ordered.

VAN der VOORT, J., files dissenting opinion.

> Mr. Walsh was already a candidate for open-heart surgery, independently of the accident. In the *Offensend* case, the plaintiff produced objective medical evidence through x-rays to substantiate a worsening of his tubercular condition after the accident. In this case, there is a lack of medical evidence as to what injury resulted from the aggravation of the pre-existing coronary artery disease. The defendant's negligence did not cause the coronary artery disease, and he is therefore not liable for the medical treatment and surgery connected with the coronary artery disease. Dr. Han could not say with any degree of reasonable medical certainty to what degree or at what speed or at what time emotional stress would accelerate or aggravate the preexisting coronary artery disease. He was unable to state that the onset of the problem came a month faster, a year faster or a day faster because of the emotional stress. He was unable to say that the need for surgery was brought on by the aggravation rather than by the underlying coronary artery disease. He was unable to say which or what pain, suffering, and inconvenience resulted from aggravation that would not have occurred in the underlying coronary artery disease independently from the accident.
>
> According to Mr. Justice Musmanno's clear interpretation of *Offensend*, supra, in *Schultz*, supra, the trial court should have permitted the jury to hear the testimony so that it could determine "damages for a reasonable time." The lower court's interpretation of *Offensend* was clearly too restricted.

VAN der VOORT, Judge:

I respectfully dissent from the decision of the majority.

This case involves a tortious injury to John A. Walsh sustained by him in an automobile collision on January 25, 1975 between appellant-plaintiff and appellee-defendant James Wesley Snyder. A jury awarded $35,000 to John Walsh and $5,000 to his wife Patricia in damages.

Appellant-plaintiff claims he should have been awarded damages for the aggravation of a pre-existing heart disease (blockage of a coronary artery) and mental stress. Two years and eight months after the accident, appellant was treated by Dr. Han who performed heart surgery on Mr. Walsh. Appellant offered to put in evidence Dr. Han's testimony in an attempt to have the jury consider the aggravation of his pre-existing arterial blockage. The trial judge ruled that this testimony (which was by deposition) was too indefinite and uncertain to be allowed in evidence. While we must consider the doctor's deposition as a whole (which I do), the doctor's testimony relating to appellant's heart condition is summed up in his answer to a question as follows:

"Q. . . . .

Is there any way that you could estimate how much sooner he might have required coronary surgery as a result of the emotional stress?

A. There is no way I can determine how much the stress will aggravate the progress of coronary artery disease."

Lest it appear that taking one answer out of context is unfair, an examination of the doctor's testimony as a whole reveals a frank inability on his part to state with any degree of medical certainty or assurance that the accident caused or aggravated the pre-existing heart condition.

I find that the trial judge ruled correctly that Dr. Han's testimony be excluded and I would affirm the action of the court below in ruling out Dr. Han's deposition.