472 A.2d 1149

James J. McCANN and Patricia McCann, H/W, Appellants,

v.

AMY JOY DONUT SHOPS, A DIVISION OF AMERICAN SNACKS, INC.

Superior Court of Pennsylvania.

Argued Sept. 19, 1983.

Filed March 9, 1984.

Petition for Allowance of Appeal Denied Sept. 7, 1984.

William D. Marvin, Philadelphia, for appellants.

B.E. Zuckerman, Norristown, for appellee.

Before SPAETH, President Judge, and CAVANAUGH, McEWEN, BECK, MONTEMURO, MONTGOMERY and CERCONE, JJ.

MONTEMURO, Judge:

This is an appeal from an order denying appellants' motion for a new trial, entered in the Court of Common Pleas, Montgomery County.

On March 20, 1975, appellant, James McCann, suffered severe gastritis, leading over the next five days to a flare-up of an existing ulcer. As a result of his condition, he underwent surgery which involved the removal of a portion of his stomach. Appellants brought this action against appellee because Mr. McCann had consumed one, and a portion of a second, cruller and a soft drink, which had been supplied by appellee on the evening prior to the onset of his illness. In this action, based on negligence and strict liability, appellants claim that the crullers supplied by appellee were excessively greasy and that consumption of them

caused Mr. McCann's ulcer to flare up. Mr. McCann's wife, Patricia, claims damages for loss of consortium.

The case was tried before a jury, which returned a verdict in favor of appellee. A motion for a new trial was timely filed, and denied.

Arguments on appeal relate solely to strict liability. Specifically, appellants argue that in its charge to the jury, the trial court erred in 1) including "unreasonably dangerous" as an element of strict liability; 2) charging that contributory negligence was a complete defense to strict liability; and 3) giving an instruction on the uncalled witness rule.

■ In order for appellant to be entitled to a new trial, the instructions complained of must be fundamentally in error, and it must appear that the erroneous instructions might have been responsible for the verdict. *Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981); *Vaughn v. Philadelphia Transportation Co.,* 417 Pa. 464, 209 A.2d 279 (1965); *Riesberg v. Pittsburgh and Lake Erie R.R.,* 407 Pa. 434, 180 A.2d 575 (1962).

■ We have carefully examined the record before us and have concluded, for the reasons described below, that no reasonable jury could have found that appellants were entitled to recover because causation, an essential element of a strict liability claim, was not in evidence. Consequently, we find it unnecessary to pass on the question of whether the challenged instructions were fundamentally erroneous; however, assuming *arguendo* that each was, we fail to see how such instructions might have been responsible for the verdict. *Jones v. Montefiore Hospital, supra; Riesberg v. Pittsburgh and Lake Erie R.R., supra.*

Appellants assert that causation was established by the testimony of their expert medical witness, Dr. Crone. They offer the following testimony as presenting sufficient evidence of causation. There is no dispute that their portion of the testimony is the sole purported evidence of causation in appellants' case.

Q. Based upon that history and examination of Mr. McCann, did you form an opinion within a reasonable

degree of medical certainty regarding the cause of this ulcer episode that Mr. McCann had surgery for?

A. Well, as I stated in this report, I said that from the history noted above it would seem that Mr. McCann had healing of the ulcer that was diagnosed in 1968 and did not require any medication for anything resembling an ulcer from 1971 until the ingestion of the donuts in 1975. It is my opinion that even though someone has apparent healing of a peptic ulcer, that recurrence can occur when there are certain aggravating circumstances.

Then I went on to say that "It does appear that the ingestion of the greasy donuts could have been such an aggravating circumstance."

Then I went on to say, "The ingestion of these donuts apparently caused an acute gastritis which, in turn, caused an increased acidity and spasms of the stomach." [1] (N.T. April 16, 1980, pp. 96–97)

There is no question that appellants' expert never stated that he believed "to a reasonable degree of medical certainty" or that "in his professional opinion" the pastries appellant ate caused his gastritis.[2] Instead, Dr. Crone stated that "The ingestion of these donuts *apparently* caused an acute gastritis ..." The use of the word "apparently" might not necessarily be fatal if we could look to the expert testimony in its entirety and find that it expresses reason-

1. Although we recognize that credibility is for the jury to determine, *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976), we note that Dr. Crone's testimony on cross-examination was as follows:
Q. I'll try to ask that again. It's not possible, then, for you to say to a reasonable medical certainty that there was anything defective about the donut which cause his ulcer flare-up; is that correct?
A. Well, I'll answer it in that I have no direct knowledge of anything being wrong with the donut.
Q. So then you couldn't give such an opinion without more knowledge of the donut and its contents; would that be correct.?
A. That's right.
(N.T. April 16, 1980, p. 105)

2. There is no dispute that Dr. Crone did not testify that the pastry was a "substantial factor" in bringing about the harm. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978).

able certainty. *See e.g. Hussey v. May Department Stores, Inc.,* 238 Pa.Super. 431, 357 A.2d 635 (1976).

This is hardly the case here. In fact, the statement quoted in the paragraph above represents the most unequivocal thing said by Dr. Crone in regard to causation. Dr. Crone's other statement that "It does appear that the ingestion of the greasy donuts *could have* been such an aggravating circumstance", certainly does not buttress appellants' argument, and also does not qualify as competent evidence. *Menarde v. Philadelphia Transportation Co.,* 376 Pa. 497, 103 A.2d 681 (1954). As our Supreme Court stated in *Smail v. Flock,* 407 Pa. 148, 152, 180 A.2d 59, 61 (1962): "[I]t is not enough to say that something could have happened. Anybody can guess."

In holding as we do, we do not behave capriciously. The requirement that expert medical testimony be expressed with reasonable certainty is well settled and supported by valid policy considerations. The rationale for the rule was discussed in some detail by our Supreme Court in *McMahon v. Young,* 442 Pa. 484, 486, 276 A.2d 534, 535 (1971).

The issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a medical expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff it must find as a fact that that condition was legally caused by the defendant's conduct.... Perhaps in the world of medicine nothing is absolutely certain. Nevertheless, doctors must make decisions in their own profession every day based on their own expert opinions. Physicians must understand that it is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.

Judgment affirmed.

CAVANAUGH, J., files dissenting opinion.

CAVANAUGH, Judge, dissenting:

I respectfully dissent. Following a verdict for the defendant, appellants sought a new trial asserting in their briefs and arguments three allegations of error. The motion for a new trial was denied and the present appeal based on the same issues was pursued. I would find that the trial court erred in charging the jury that contributory negligence is a defense to strict liability. *Berkebile v. Brantly Helicopter*, 462 Pa. 83, 337 A.2d 893 (1975) and that error was also committed when the court gave the uncalled witness charge in inappropriate circumstances. *Bentivoglio v. Ralston*, 447 Pa. 24, 288 A.2d 745 (1972). I would further find that both errors were clearly prejudicial and would, therefore, grant a new trial.

The majority, without passing on the merits of the only issues presented on appeal affirms the trial court in the denial of a new trial on the ground that the erroneous instructions could not have been responsible for the verdict. The majority finds that the expert medical testimony was not expressed with reasonable certainty and presumably concludes that for this reason a verdict for appellant could not properly be reached. I must disagree for a number of reasons.

I

The rule that error must be harmless does not give a court on review the right to search the entire record to determine if there is any unpreserved error to justify finding assumed, or found error to be, nevertheless, harmless. Here, the trial court sent the issue of causation to the jury. Appellee, through his trial attorney apparently found no error in this since he stated that he was satisfied with the instructions save for the refusal of his single request for binding instructions. Nor does the majority show where in the trial record *any* assertion was made that the medical causation issue was insufficient to create a jury question. Consequently, I believe the majority reached its dispositive issue in violation of the most fundamental precepts of the

waiver doctrine under Pennsylvania law. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

## II

In bypassing the preservation principle, the majority places Amy Joy in a better position than they would be if the appellee had carefully preserved the medical causation issue. Let us suppose that objection had been made at trial, and to the charge, that there was not competent evidence as to medical causation and that this argument was preserved in post-trial motions and on cross appeal to this court (in the context of a claim that even if McCann is able to show error which would merit the grant of a new trial, the lack of sufficient evidence of causation would prohibit the grant of a new trial since the remedy for insufficiency is not the grant of a new trial, but affirmation of the judgment). I submit that if appellee had done all those things we would have had to disagree—for the remedy for improperly permitting incompetent evidence is not to affirm a judgment or grant judgment n.o.v. but only to grant a new trial, since it is the law of this Commonwealth that judgment cannot be entered on a diminished record. In *Rodgers v. Sun Oil Co.*, 189 Pa.Super. 559, 151 A.2d 673 (1959) in a case where evidence was improperly considered as proof of negligence the court stated:

> The lower court properly refused to enter judgment for the defendant; judgment n.o.v. could not have been entered on the diminished record after elimination of the incompetent testimony of the plaintiff [citing cases] and the grant of a new trial was the only alternative.

*Accord: Hughes v. John Hanna and Sons*, 187 Pa.Super. 466, 144 A.2d 617 (1958); *Finkleston v. Kapnek*, 184 Pa.Super. 174, 133 A.2d 310 (1957).

Similarly, in a case dealing with the precise issue addressed by the majority, our Supreme Court, through Mr. Justice O'Brien, concluded, after finding inadequate causative medical testimony; "[b]ecause Mrs. McMahon's doc-

tor's testimony was not made with sufficient certainty, it was not legally competent evidence *and a new trial must be granted.*" (Emphasis added.) *McMahon v. Young,* 442 Pa. 484, 486, 276 A.2d 534, 535 (1971). *See also Wargo v. Pittsburgh Railways Co.,* 376 Pa. 168, 101 A.2d 638 (1954). I, therefore, believe that, even if the majority was correct in reaching and deciding the causation issue, the conclusion that no new trial should be granted is erroneous.

### III

I disagree with the majority in its conclusion that the expert medical testimony did not present sufficient evidence of causation. In the leading case of *Menarde v. PTC,* 376 Pa. 497, 103 A.2d 681 (1954) Justice Chidsey stated the standard for sufficient expert testimony as to medical causation, "[m]oreover the expert has to testify not that the condition of the claimant might have, or even probably did, come from the accident, but that *in his professional opinion the result came from the cause alleged.*" (Emphasis added)

It is true that this simple formula has, in more recent years, been complicated by the implied requirement that the witness must be asked if he has an opinion "with reasonable medical certainty". See, for example, *Walsh v. Snyder,* 295 Pa.Super. 94, 441 A.2d 365 (1981); *Commonwealth v. Alston,* 269 Pa.Super. 573, 410 A.2d 849 (1979); *Ranieli v. Mutual Life Ins. Co.,* 271 Pa.Super. 261, 413 A.2d 396 (1979). One may ask what usage or clarity this phrase adds for, indeed, there are no degrees of certainty and the only issue is the basic one of, "What is your opinion?". But, no matter, since counsel in our case used the proper new phrase in asking the question and so long as the question is responsively answered and an affirmative opinion given it suffices. What then is the shortcoming? As the majority states, Dr. Crone answered the crucial question in part, "[t]hen I went on to say, 'the ingestion of these donuts apparently caused an acute gastritis which, in turn, caused an increased acidity and spasms of the stomach.'"

I must disagree with the majority that the use of the word "apparently" weakens in any way the expert opinion. It may, in fact, be read to strengthen it, since a first meaning of this word is "clear or manifest to the understanding" *Webster's Collegiate Dictionary.* My reading of Dr. Crone's testimony leads me to conclude that it fully meets our requirements as to expert medical opinion. *See also Walsh v. Snyder, supra.*

## IV

While the majority speaks to the degree of medical certainty issue in its disposition, it also alludes to the issue in a different fashion wherein it states that "causation, an essential element of a strict liability claim, was not in evidence." (Page 342.) Further suggestion that this may be the ground for the majority disposition is found in the conclusion that all of appellants' allegations of error "relate solely to strict liability." (Page 342.) Initially, I disagree with the latter conclusion since the "uncalled witness" claim of error clearly relates to both the strict liability and negligence theories. But, more basically, I believe that strict liability causation and medical causation are two different issues, not to be confused. The rule as to strict liability has been cogently stated:

> Strict liability requires, in substance, only two elements of requisite proof: the need to prove that the product was defective, and the need to prove that the defect was a proximate cause of the plaintiff's injuries.
>
> *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975).

As pointed out in *Berkebile* there is injury without a defect (developing diabetic shock from eating sugar) and sometimes there is a defect without causation (sustaining an eye injury while not wearing defective safety glasses). In our case, we have evidence of a defect (greasy donut) and an injury (acute gastritis and its aftermath) and the

problem is the link between the two.[1] Although this is really a dual issue of strict liability causation and medical causation they need only be answered by one opinion so long as the more strict standard of proof is used. Thus, since I believe the medical standard ("In my opinion" or "In my opinion based upon reasonable medical certainty") represents the more stringent measure of proof I conclude proof that the testimony was more than adequate to present the strict liability theory to the jury.

---

1. In many cases, the two "causation" issues may be easily separated. In a case where there is a claim of an arthritic condition as a result of a fall caused by defective equipment, for example, there may be a question; (A) whether the alleged defect in the equipment was the cause of the fall and (B) whether, as a result of the fall, the claimant suffered arthritis.