SABO, J.,
I. PROCEDURAL POSTURE
The instant appeals have been taken from the entry of nonsuits in favor of the defendants and against plaintiffs Dallas Sharpless and Richard Wilson.
The two plaintiffs’ cases were tried along with four other asbestos actions in a consolidated proceeding before this court held in November 1993. Consistent with standard practice in the Pennsylvania courts, the trial was reverse-bifurcated with the trial on causation and damages preceding the liability phase. At the close of the plaintiffs’ cases-in-chief in the first phase of the proceeding, the defendants moved for a compulsory nonsuit and the motion was granted.
Both Dallas Sharpless and Richard Wilson subsequently filed post-trial motions and perfected timely appeals. This opinion follows.
II. DALLAS SHARPLESS
The plaintiff, Dallas Sharpless, alleged that he was exposed to asbestos while working as a laborer in a boiler room at the Philadelphia Naval Shipyard in the 1940s and during his tenure as a welder, material handler and press shop grinder for the Budd Company between 1952 and 1985. (Record, Nov. 4, 1993 at 21.)
As a result of his asbestos exposure, the plaintiff asserts that he has experienced a chronic cough and shortness of breath. To support this contention, Dallas Sharpless called Dr. Stanley Altschuler, a pulmonary specialist, as an expert witness.
Dr. Altschuler testified at length about the plaintiff’s lung condition.
*547 In evaluating the defendants’ motion for nonsuit, we are guided by the standard set forth in Hatbob v. Brown, 394 Pa. Super. 234, 237, 575 A.2d 607, 608 (1990), in which it is stated:
“Amotion for compulsory nonsuit allows a defendant to test the sufficiency of a plaintiff’s evidence. . . . It may be entered only in cases where it is clear that the plaintiff has not established a cause of action giving the plaintiff the benefit of all favorable evidence and all reasonable inferences arising from the evidence.... However, a jury may not be permitted to reach its verdict based on speculation or conjecture. ... A judgment of nonsuit is properly entered if the plaintiff has not introduced evidence sufficient to establish the necessary elements to maintain an action.” (citations omitted) See also, Smith v. King’s Grant Condominium, 418 Pa. Super. 260, 264-65, 614 A.2d 261, 263 (1992), aff’d, 537 Pa. 51, 640 A.2d 1276 (1994).
Applying this criteria and drawing all possible inferences in favor of the plaintiff, the court finds that Dr. Altschuler’s opinion as to causation is too tenuous to afford relief and that the plaintiff is unable to satisfy the requisites for establishing a cognizable cause of action for an asbestos-related injury.
In assessing the merits of the defendants’ motions for compulsory nonsuit, the pivotal focal point is whether the plaintiff’s expert testimony satisfied the legal requisites so that the case could be submitted to the jury. A proper evaluation of this issue requires an analysis of the causation standard articulated under Pennsylvania law and the specific rules of law applied in the context of asbestos cases which impact upon this.
It is well settled under the law of this Commonwealth that an expert opinion on causation must be offered *548 with “a reasonable degree of medical certainty.” McCann v. Amy Joy Donut Shops, 325 Pa. Super. 340, 343, 472 A.2d 1149, 1151 (1984). Commenting upon this standard, the Pennsylvania Superior Court, in the frequently cited case of Kravinsky v. Glover, 263 Pa. Super. 8, 396 A.2d 1349 (1979), explains:
“When a party must prove causation through expert testimony, the expert must testify with ‘reasonable certainty’ that ‘in his professional opinion, the result in question did come from the cause alleged.’ ... An expert fails this standard of certainty if he testifies that the alleged cause ‘possibly’ or ‘could have’ led to the result, that it ‘could very properly account’ for the result, or even that it was ‘very highly probable’ that it caused the result.” Id. at 21, 396 A.2d at 1355-56 (1979). (citation omitted)
Opinions predicated solely upon conjecture, in which the causal nexus is not sufficiently established, justify the entry of a nonsuit, since, as further held by the court in Kravinsky:
“[I]t is the intent of our law that if the plaintiff’s . . . expert cannot form an opinion with sufficient certainty so as to make a [professional] judgment, there is nothing on the record with which a [fact-finder] can make a decision with sufficient certainty as to make a legal judgment.” Id. at 21, 396 A.2d at 1356. (citation omitted)
While Kravinsky articulates the degree of certitude necessitated for submitting a case to a jury, the issue takes on an added complexity given the decisions rendered by the Pennsylvania Supreme Court in the landmark cases of Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280 (1978) and Mitzelfelt v. Kamrin, 526 Pa. 54, 584 A.2d 888 (1990).
*549 In both Bashline and Mitzelfelt, the standard for establishing causation is relaxed, and the court finds it only necessary to establish by a reasonable degree of medical certainty an “increased risk of harm” created by the defendant’s conduct.
For purposes of adjudging the motions for nonsuit, it is of paramount importance to consider whether the ordinary standard of medical certitude applies instantly or whether the cases at bar are governed by the relaxed standards articulated in Bashline and Mitzelfelt. This analysis is of significant legal import given that the criteria by which an expert physician’s opinion must be adjudged in an asbestos action for purposes of determining whether it has been rendered with a “reasonable degree of medical certainty” is apparently a matter of first impression in this Commonwealth.
A close review of Bashline and Mitzelfelt reveals that the broader and more relaxed standard articulated therein is limited to certain specific causes of action involving tortious conduct. This point is expounded upon within the opinions themselves and is further clarified by considering the factual circumstances presented in those cases.
Bashline involved a medical malpractice action instituted on behalf of a decedent alleging that a hospital failed to exercise reasonable care in treating her after she reported chest pains. In that case, the patient died after the hospital failed to provide an operable electrocardiogram machine. The plaintiff’s expert witness in Bashline offered an opinion that if the hospital employed certain methods and treatment, the patient would have had a 75 percent chance of surviving the myocardial infarction.
Predicating its opinion upon section 323 of the Restatement (Second) of Torts, the Pennsylvania Supreme *550 Court panel in Bashline held that if the plaintiff could establish that the “defendant’s negligent act or omission ‘increased the risk of harm’ to a person in the plaintiff’s position and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm.” Id. at 269, 392 A.2d at 1286.
The relaxed standard applied in Bashline was expressly limited by that court to causes of action falling within the purview of section 323 of the Restatement (Second) of Torts, which encompasses the “negligent performance of undertaking to render services.”
This point is brought to light in the opinion by the learned justices who take notice of the unique difficulties associated with establishing causation in such actions which are not otherwise presented.
In distinguishing cases predicated upon negligent performance of services from other types of actions, the court proceeds to state that “[s]uch cases by their very nature elude the degree of certainty one would prefer and upon which the law normally insists before a person may be held liable.” Id. at 271, 392 A.2d at 1287.
Commenting at length about this distinction, Justice Pomeroy, on behalf of the Pennsylvania Supreme Court, professes:
“Section 323(a) recognizes that a particular class of tort actions, of which the case at bar is an example, differs from those cases normally sounding in tort. Whereas typically a plaintiff alleges that a defendant’s act or omission set in motion a force which resulted in harm, the theory of the present case is that the defendant’s act or omission failed in a duty to protect against harm from another source. To resolve such a claim, a fact-finder must consider not only what did occur, but also what might have occurred, i.e., whether *551 the harm would have resulted from the independent source even if defendant had performed his service in a non-negligent manner. Such a determination as to what might have happened necessarily requires a weighing of probabilities. As one authoritative text on tort law observes:
“Thus where it appears how an accident happened and also that the victim might have saved himself by taking advantage of a precaution which it has been shown defendant negligently failed to afford, courts have generally let a jury find the failure caused the harm, though it is often a pretty speculative matter whether the precaution would in fact have saved the victim.” Id. at 269-70, 392 A.2d at 1286-87. (citation omitted) (emphasis in original) (footnote omitted)
In view of the specific difficulties with establishing causation in cases falling under section 323 of the Restatement (Second) of Torts, the court in Bashline abandons the traditional test for medical certitude allowing such cases to go to the jury upon a “less than normal threshold of proof.” Id. at 271, 392 A.2d at 1287-88.
In essence, Bashline takes recognition of the inherently speculative nature of negligence actions qualifying under section 323(a) of the Restatement (Second) of Torts and specifically creates an exception to the general rule for establishing causation.
The fact that the relaxed standard is not intended to apply outside that context is clarified by the Pennsylvania Supreme Court in Bashline where it is stated: “we do not intend to undermine the well-established standard of ‘reasonable degree of medical certainty’ as the accepted norm for medical opinion on causation. But we think it would be unreasonable and unrealistic in this type of case to expect a physician to state with a ‘reasonable degree of medical certainty’ what might *552 have happened when the law (section 323(a)) recognizes the contingencies involved.” Id. at 273, 392 A.2d at 1288. (emphasis in original) (footnote omitted)
Mitzelfelt reiterates the standard enunciated in Bash-line but is a much more recent opinion. Mitzelfelt is analogous to Bashline since it also involves a medical malpractice action. Adopting the criteria applied in Bashline, the Supreme Court panel in Mitzelfelt likewise applies the “increased risk of harm” standard. Id. at 64, 584 A.2d at 892.
As in Bashline, the holding in Mitzelfelt applies to negligence actions falling under section 323 of the Restatement (Second) of Torts. Mitzelfelt does not expand this standard to apply to other types of causes of action. This point is quite evident given that Mitzelfelt cites another Pennsylvania Supreme Court decision, Gradel v. Inouye, 491 Pa. 534, 421 A.2d 674 (1980) for the proposition that “[w]hen applicable . . . section 323(a) relaxes the degree of certainty ordinarily required of a plaintiff’s evidence to provide a basis upon which the jury may find causation.” Id. at 66, 584 A.2d at 894. Mitzelfelt focuses upon the difficulties associated with establishing causation in medical malpractice cases and recognizes the applicability of a relaxed standard in that context.[1]
*553 The case at bar differs from Bashline and Mitzelfelt since it does not fall within the parameters of section 323 of the Restatement (Second) of Torts and does not involve the rendition of services. In contrast with medical malpractice cases, asbestos actions are primarily predicated upon principles of strict liability.[2] In the case at bar, the court is not confronted with an inherently speculative question such as what would have happened if certain services were rendered or what would have been the result if services were rendered differently. Instead, a concrete issue is presented, namely, whether the expert can testify based upon a review of medical tests that an individual has an asbestos-related disease or is exhibiting a physical limitation caused through exposure to asbestos.
Given that the instant proceeding, which involves strict liability, is not governed by the relaxed standard articulated in Bashline and Mitzelfelt, the plaintiff is bound by the usual standard of causation.
It therefore follows that the plaintiff must present expert testimony setting forth with a reasonable degree of medical certainty that the plaintiff’s exposure to asbestos was a substantial contributing factor to an asbestos-related disease or physical manifestation. It would not suffice to opine that the exposure to asbestos *554 merely increased the risk of harm of an asbestos-related malady.[3]
This standard for medical certitude cannot be viewed in a vacuum. There are some very specific criteria uniquely applicable to asbestos cases which include rules pertaining to asbestos-related physical manifestations and symptoms. These rules regulate what is necessitated for establishing a prima facie case and therefore must be incorporated into an analysis of whether a case has been set forth with the requisite degree of medical certitude. As recognized by the court in Giffear v. Johns-Manville Corp., 429 Pa. Super. 327, 632 A.2d 880 (1993), aff’d sub nom., Simmons v. Pacor Inc., 543 Pa. 664, 674 A.2d 232 (1996), what constitutes a cognizable cause of action is a legal question reserved for a court and not a factual question for a jury. Id. at 340, 632 A.2d at 887.
Oftentimes, it can be discerned and verified through testing that a person is afflicted with a specific asbestos-related disease such as mesothelioma. In such cases, the plaintiff has an obvious cause of action. In other instances, however, there are physical manifestations of asbestos exposure in the lungs but the person is not considered to have an actionable malady under the law.
With respect to the latter, the courts, in a series of cases commencing with Giffear v. Johns-Manville Corp., supra, have set forth specific rules governing cases brought upon the ground that there is pleural *555 thickening in proximity to a person’s lungs. Specifically, it has been held that “pleural thickening, absent disabling consequences or manifest physical symptoms is a noncompensable injury.” Id. at 335, 632 A.2d at 884.[4] It is only when a plaintiff establishes “discernible physical symptoms,” a “functional impairment” or “disability” caused by pleural thickening that relief can be afforded. Id. at 341, 632 A.2d at 887.
As explained in Giffear, the rationale underlying this rule is that “in virtually all pleural plaque and pleural thickening cases, plaintiffs continue to lead active, normal lives, with no pain or suffering, no loss of the use of an organ or disfigurement due to scarring.” Id. at 339, 632 A.2d at 887.
Although the black letter law applies specifically to pleural thickening, the discussion of the rule and the underlying reasoning makes it equally applicable when a claimant presents evidence of pleural plaques.[5]
Taking this specific rule of law into context with the rule of medical certainty, it follows that a doctor offering expert testimony cannot merely testify that a *556 patient is afflicted by pleural thickening or pleural plaques caused by asbestos. Rather, with the requisite degree of medical certitude, the doctor must testify that the person has an accompanying “discernible physical symptom,” “functional impairment” or “disability.”
The rule is further qualified by virtue of holdings in which the courts have found that maladies such as shortness of breath are not actionable. See Taylor v. Owens-Corning Fiberglas Corp., 446 Pa. Super. 174, 187 n.2, 666 A.2d 681, 687 n.2 (1995). Finding that shortness of breath does not qualify as a discernible physical symptom of an asbestos-related disease, the court in White v. Owens-Corning Fiberglas Corp., 447 Pa. Super. 5, 25, 668 A.2d 136, 146 (1995), commented:
“It is common knowledge that breathlessness is associated with any number of non-asbestos-related ailments including lung cancer, excessive cigarette smoking, heart disease, obesity, asthma, emphysema and allergic reactions.”
In view of the above-stated principles, the court finds that it is compelled to review the contents of Dr. Altschuler’s testimony quite carefully to determine (1) whether it is rendered with the requisite medical certitude; (2) whether the type of harm about which the doctor testified forms a cognizable cause of action in light of the specific rules applicable to asbestos cases.
The plaintiff in this case neither sets forth facts nor test results substantiating that he is currently afflicted with mesothelioma, asbestosis, or any type of lung cancer caused by asbestos exposure. The record is devoid of any instance in which the expert witness identifies a specific disease by which the plaintiff is currently afflicted. The claim, instead, is predicated upon the theory that the asbestos exposure caused or contributed to pleural thickening and pleural plaques and that the *557 plaintiff’s cough and shortness of breath were caused by his asbestos exposure. The plaintiff attempts to place this under the rubric of an asbestos-related disease. In reality, however, the case is more akin to the pleural thickening cases.
The causal analysis proffered by Dr. Altschuler lacked the requisite degree of medical certitude and his physical findings were quite limited. Through x-rays, the doctor determined the presence of pleural thickening, bilateral pleural plaques, and rales in the plaintiff’s lungs. (Record, Nov. 4, 1993 at 24, 27.) While these manifestations of asbestos exposure exist, the record indisputably establishes that Dallas Sharpless was afflicted with emphysema, had a history of tuberculosis and had been a cigarette smoker since the age of 13. Sharpless further acknowledged having been exposed to welding fumes through his work, posing a risk of damage to the lung. (Record, Nov. 4, 1993 at 41.)
Dr. Altschuler conducted a series of pulmonary function tests and ascertained that the plaintiff’s airway was restricted, his lung volume was expanded in certain locations, and his ability to supply oxygen into the bloodstream through diffusion was 51 percent of normal capacity.
In reaching these findings, however, Dr. Altschuler was unable to attribute them to Dallas Sharpless’ exposure to asbestos. Instead, Dr. Altschuler found that the plaintiff’s airway obstruction was caused by cigarette smoking and that his lung expansion resulted from emphysema. (Record, Nov. 4, 1993 at 31-32.)
At trial, the plaintiff claimed that his asbestos exposure has caused shortness of breath and a chronic cough. It is notable, however, that he never even advised Dr. Altschuler of his shortness of breath. (Record, Nov. 4, 1993 at 39.) While Dr. Altschuler found pleural *558 plaques in the plaintiff’s lungs, he found that neither the plaintiff’s cough nor his shortness of breath were caused by them. (Record, Nov. 4, 1993 at 55.)
Although the plaintiff avers that there is a causal connection between his exposure to asbestos and his chronic cough, Dr. Altschuler actually controverts this theory on cross-examination. Through the record, it could be gleaned that the plaintiff’s cough produced sputum and mucous. (Record, Nov. 4, 1993 at 42.) When questioned about the cough on cross-examination, Dr. Altschuler acknowledged that a cough which produces sputum and mucous is typically caused by smoking and that an asbestos-related cough is ordinarily dry. (Record, Nov. 4, 1993 at 42.) In so acknowledging, the doctor replied affirmatively to a question posed as to whether the actual cough in this case was due, at least in part, to cigarette smoking. (Record, Nov. 4, 1993 at 42.)
In conjunction with the above responses, the doctor himself took recognition of the fact that he was unable to ascertain with any degree of certainty the cause of the plaintiff’s cough. This uncertainty is highlighted through the following responses elicited from Dr. Altschuler on cross-examination:
“Question: Well, the, what is your testimony, then, as to what is causing this cough that he described to you?
“Answer: I don’t know if anyone knows that 100 percent. Epidemiologic studies show that it exists. Short of doing a lung biopsy on an individual it is difficult to tell. I can give you my theories but I can’t state for certain what’s going on inside his lungs.
“Question: You can’t state that with a reasonable degree of medical certainty as to what for sure is going on inside his lungs?
*559 “Answer: That’s right, I can’t say whether there is interstitial fibrosis inside his lungs or not. I can’t see it on an x-ray. I will hear the crackles and short of doing a lung biopsy I wouldn’t know if there is actual scarring. I can state that there are millions of asbestos dust fibers out there. And I don’t know what component of the fibers themselves, what component of the scarring causes a deterioration of pulmonary function in patients with asbestos pleural disease.” (Record, Nov. 4, 1993 at 55-56.)
On review, the court finds that even after affording the plaintiff all favorable inferences, Dr. Altschuler’s testimony concerning the cause of the cough is highly speculative. The court further finds that any inference that the plaintiff is currently afflicted with an asbestos-related disease would also be quite tenuous. The testimony is replete with statements by Dr. Altschuler evidencing his inability to establish with a reasonable degree of medical certainty that the plaintiff ’s exposure to asbestos was a substantial contributing factor to his cough or any other physical malady.
Given that the instant proceeding involves a claim for symptoms relating to pleural thickening and pleural plaques, the court next turns to whether the requisites set forth under Giffear for a cognizable action are set forth. In some respects, the analysis is repetitive.
Incorporating the criteria articulated in Giffear into the medical certitude test, the court finds that Dr. Altschuler does not testify with a reasonable degree of medical certainty that the plaintiff had “discernible physical symptoms,” a “functional impairment” or “disability” caused by pleural thickening or pleural plaques. In so holding, the court finds that the type of harm about which the doctor has testified, shortness of breath and a cough, do not qualify as such.
*560 As previously noted, shortness of breath, in and of itself, is not actionable given that there are many potential causes for it and it is highly commonplace. The same rationale holds true for coughs which are also rather commonplace and may emanate from any number of causes.
The speculative nature of the claims is especially apparent in the case at bar where the plaintiff acknowledges being afflicted with emphysema, having had tuberculosis, having been a long-term smoker, and having been exposed to welding fumes. There simply are no manifest physical impairments which are specifically attributable to the asbestos exposure.
In entering a nonsuit, the court notes that this action is taken with the realization that the plaintiff may later institute suit should he manifest “discernible physical symptoms,” a “functional impairment” or “disability” caused by pleural thickening. See Giffear, supra at 341, 632 A.2d at 887. Likewise, the plaintiff will be able to institute suit if he develops an asbestos- related disease such as asbestosis, mesothelioma, or another form of asbestos-related cancer. Hopefully, that will not be the case.
In sum, the court finds Dr. Altschuler’s testimony to be highly speculative. The causal connection is not drawn with the requisite degree of medical certainty and is a matter of pure conjecture. The plaintiff’s claim must further fail since he fails to set forth adequate indicia of an asbestos-related injury to entitle him to relief under the standards existing under Pennsylvania law based upon the expert testimony presented.[6]
*561 In so holding, the court notes that even if we were to apply the more liberal standard of causation propounded in Bashline and its progeny, the same result would be warranted. This is a matter based upon pure speculation where the expert actually attributes Dallas Sharpless’ airway obstruction and cough to cigarette smoking.
III. RICHARD WILSON
The court addresses the motions for nonsuit against Richard Wilson, utilizing the same criteria as applied in the case of Dallas Sharpless.
At trial, Richard Wilson asserted that he was exposed to asbestos while working for the Budd Company. A number of grounds were advanced for recovery.
Richard Wilson first introduced evidence establishing that there was mild pleural thickening in the proximity of his lungs and that he experienced shortness of breath. (Record, Nov. 4, 1993 at 118, 142.) Dr. Altschuler opined with a reasonable degree of medical certainty that the pleural thickening found in Mr. Wilson’s lungs was caused by his exposure to asbestos. (See Record, Nov. 4, 1993 at 121-22.)
By itself, the pleural thickening does not create a cognizable cause of action regardless of the causal connection drawn by Dr. Altschuler. This is quite clear in light of Giffear, supra,which requires that the plaintiff demonstrate “discernible physical symptoms,” a “functional impairment” or “disability.”
*562 While the plaintiff complains of shortness of breath, this does not qualify as a “discernible physical symptom” in light of the holdings in Taylor, supra and White, supra. Given that Dr. Altschuler does not testify as to any other resulting physical impediments or limitations resulting from the asbestos exposure, no cognizable action is presented on the grounds of pleural thickening and shortness of breath.
Richard Wilson next contends that his asbestos exposure contributed to interstitial fibrosis found in his lungs. Dr. Altschuler’s testimony, however, presented a highly tenuous and theoretical argument that this could have occurred. No tests, biopsies, x-rays or other concrete evidence or findings were presented linking the interstitial fibrosis with the asbestos exposure.
Dr. Altschuler’s inability to draw a causal link between asbestos exposure and the fibrosis is manifested throughout the testimony. From the record, it could be gleaned that Richard Wilson had been a smoker for 15-20 years and was afflicted with sarcoidosis, a disease affecting the lungs.
None of the radiologists who reviewed x-rays of Mr. Wilson’s lungs attributed the interstitial fibrosis to asbestos exposure. Instead, the interstitial fibrosis was linked with sarcoidosis. ((See Record, Nov. 4, 1993 at 123, 132) (Dr. Levine characterized x-ray results as being typical of sarcoidosis or non-infectious granulomas).) ((Record, Nov. 4, 1993 at 131-32) (Dr. Borden also concluded that the x-rays evidenced manifestations of sarcoidosis in the lungs).)
Dr. Altschuler initially opined that Richard Wilson’s interstitial fibrosis was caused by both sarcoidosis and exposure to asbestos. Even at that time, the doctor definitively stated that he cannot make a determination as to how much of the interstitial scarring is caused *563 by sarcoidosis and how much by asbestos. (Record, Nov. 4, 1993 at 123, 162.)
Later in the testimony, however, the doctor admitted not knowing what caused the fibrosis but thinking that “sarcoidosis had a lot to do with it.” (Record, Nov. 4, 1993 at 167.)
For purposes of adjudging Dr. Altschuler’s testimony, the court reviews it in its entirety, rather than considering each statement in isolation. See Kravinsky, supra at 21-22, 396 A.2d at 1356 (it is necessary to take expert testimony in its entirety to determine if it expresses reasonable certainty). Even after so doing, however, it is evident that Dr. Altschuler’s opinion is not rendered with the requisite certitude.
Given that Dr. Altschuler himself cannot ascertain to what extent, if any, the asbestos exposure impacted upon the scarring, it follows that it would be a matter of pure conjecture for a jury to determine whether it constituted a “substantial contributing factor.”
In reaching this finding, the court does not imply that Dr. Altschuler must precisely specify to what extent asbestos is the cause of the interstitial fibrosis. Instantly, however, the expert witness is not even able to apply general qualifiers to the effect that the fibrosis is mainly, largely, predominantly, or substantially caused by asbestos exposure. Instead, the doctor merely describes the asbestos as a “contributing factor,” states that “asbestos-related problems added to the interstitial fibrosis” and finally opined that he did not know how much of it was caused by asbestos. (Record, Nov. 4, 1993 at 122, 158.)
When the lack of certitude is assessed in conjunction with the test results attributing other causes to the fibrosis, it is evident that the plaintiff has failed to set forth a prima facie case on this particular issue.
*564 The plaintiff’s case is presented under the rubric of an asbestos-related disease. (Record, Nov. 4, 1993 at 128.) The term is applied generically and no particular disease is ever identified. Accordingly, no other ground for relief is set forth.
In view of the absence of a causal connection and purely speculative nature of Richard Wilson’s claim, the entry of a nonsuit is warranted.

. This is not the first case to discuss the applicability of the holding in Bashline to other types of actions. In Marlin v. W.W. Babcock Co., 21 Phila. 383 (1990), the Philadelphia Court of Common Pleas found that a- strict liability action was not governed by the relaxed standard as to medical certitude. Babcock discusses at length section 323 of the Restatement (Second) of Torts and concludes that the less stringent standard only applies to cases falling within its purview. Given that this is a common pleas court decision, it is not binding. Nonetheless, the analysis set forth therein is useful when addressing the subject matter.

. In McCann, supra, a lawsuit was instituted by an individual claiming that the consumption of crullers supplied by the defendant caused an ulcer to flare up. As in the case at bar, the action involved claims falling under strict liability. Addressing the issue of whether a medical opinion was rendered with a “reasonable degree of medical certainty,” the Superior Court opined that “causation, an essential element of a strict liability claim, was not in evidence.” Id. at 342, 472 A.2d at 1150. The court made this finding even though the doctor testified that the ingestion of donuts “apparently caused an acute gastritis.”

. In an asbestos action, the quintessential issue is whether exposure to asbestos constituted a “substantial contributing factor” to the development of an asbestos-related malady. Rafter v. Raymark Industries Inc., 429 Pa. Super. 360, 370, 632 A.2d 897, 902 (1993); see also, McNeil v. Owens-Corning Fiberglas Corp., 545 Pa. 209, 680 A.2d 1145 (1996).

. Pleural thickening is the formation of calcified tissue on the membranes surrounding the lungs which may be objectively determined in the sense that it shows up on an x-ray. Doe v. Johns-Manville Corp., 324 Pa. Super. 469, 472, 471 A.2d 1252, 1253 (1984).

. While it is settled that plaintiffs who have pleural thickening or pleural plaques but who are unable to meet the above-stated standard may not recover damages, they are not forever foreclosed from obtaining relief. A suit can later be instituted should the pleural thickening or pleural plaques later manifest themselves into a physical impairment. Giffear, supra at 341, 632 A.2d at 888; see also, Taylor v. Owens-Corning Fiberglas Corp., 446 Pa. Super. 174, 187, 666 A.2d 681, 688 (1995) (a plaintiff who is currently asymptomatic but develops a symptomatic asbestos-related disease in the future will later have a cause of action).

. In view of Doctor Altschuler’s inability to attribute the plaintiff’s physical manifestations to an asbestos-related disease, the commonplace nature of the plaintiff’s cough and shortness of breath, the *561 absence of any substantiating indicia of asbestosis, mesothelioma or asbestos-related cancer, and plaintiff’s history of emphysema, smoking, and tuberculosis, the plaintiff fails to set forth a case for submission to a jury.